IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4037 |
| WE INFORM, LLC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4041 |
| INFOMATICS, LLC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4045 |
| THE PEOPLE SEARCHERS, LLC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4075 |
| DM GROUP, INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4080 |
| DELUXE CORPORATION, et al. | : | |

ATLAS DATA PRIVACY                   :          CIVIL ACTION
CORPORATION, et al.                  :
                                     :
          v.                         :
                                     :          NO. 24-4096
DELVEPOINT, LLC, et al.              :

---

ATLAS DATA PRIVACY                   :          CIVIL ACTION
CORPORATION, et al.                  :
                                     :
          v.                         :
                                     :          NO. 24-4098
QUANTARIUM ALLIANCE, LLC,            :
et al.                               :

---

ATLAS DATA PRIVACY                   :          CIVIL ACTION
CORPORATION, et al.                  :
                                     :
          v.                         :
                                     :          NO. 24-4103
YARDI SYSTEMS, INC., et al.          :

---

ATLAS DATA PRIVACY                   :          CIVIL ACTION
CORPORATION, et al.                  :
                                     :
          v.                         :
                                     :          NO. 24-4141
DIGITAL SAFETY PRODUCTS,             :
LLC, et al.                          :

---

ATLAS DATA PRIVACY                   :          CIVIL ACTION
CORPORATION, et al.                  :
                                     :
          v.                         :
                                     :          NO. 24-4143
CIVIL DATA RESEARCH                  :

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4160 |
| SCALABLE COMMERCE, LLC, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4174 |
| LABELS & LISTS, INC | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4176 |
| INNOVIS DATA SOLUTIONS INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4178 |
| ACCURATE APPEND, INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4256 |
| ZILLOW, INC., et al. | : | |

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | NO. 24-4261 |
| EQUIMINE, INC., et al. | : | |

---

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | NO. 24-4292 |
| MELISSA DATA CORP., et al. | : | |

---

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | NO. 24-4324 |
| RESTORATION OF AMERICA, et al. | : | |

---

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | NO. 24-4345 |
| i360, LLC, et al. | : | |

---

| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | NO. 24-4380 |
| GOHUNT, LLC, et al. | : | |

---

ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                              :
        v.                   :
                              :            NO. 24-4383
ACCUZIP, INC., et al.        :

_____

ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                              :
        v.                   :
                              :            NO. 24-4385
SYNAPTIX TECHNOLOGY, LLC,     :
et al.                        :

_____

ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                              :
        v.                   :
                              :            NO. 24-4389
JOY ROCKWELL ENTERPRISES,     :
INC., et al.                  :

_____

ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                              :
        v.                   :
                              :            NO. 24-4390
FORTNOFF FINANCIAL, LLC,      :
et al.                        :

_____

ATLAS DATA PRIVACY            :            CIVIL ACTION
CORPORATION, et al.          :
                              :
        v.                   :
                              :            NO. 24-4392
MYHERITAGE, LTD., et al.      :

_____

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :          NO. 24-4434
E-MERGES.COM, INC.                :

---

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :          NO. 24-4609
NUWBER, INC., et al.              :

---

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :          NO. 24-4664
ROCKETREACH LLC, et al.           :

---

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :          NO. 24-4949
BELLES CAMP COMMUNICATIONS,       :
INC., et al.                      :

---

ATLAS DATA PRIVACY                :          CIVIL ACTION
CORPORATION, et al.               :
                                  :
        v.                        :
                                  :          NO. 24-5600
PROPERTYRADAR, INC., ET AL.       :

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY | : | CIVIL ACTION |
| CORPORATION, et al. | : | |
| | : | |
|      v. | : | |
| | : | NO. 24-5656 |
| THE ALESCO GROUP, L.L.C. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY | : | CIVIL ACTION |
| CORPORATION, et al. | : | |
| | : | |
|      v. | : | |
| | : | NO. 24-5658 |
| SEARCHBUG, INC. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY | : | CIVIL ACTION |
| CORPORATION, et al. | : | |
| | : | |
|      v. | : | |
| | : | NO. 24-5775 |
| AMERILIST, INC., et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY | : | CIVIL ACTION |
| CORPORATION, et al. | : | |
| | : | |
|      v. | : | |
| | : | NO. 24-7324 |
| US DATA CORPORATION, et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY | : | CIVIL ACTION |
| CORPORATION, et al. | : | |
| | : | |
|      v. | : | |
| | : | NO. 24-8075 |
| SMARTY, LLC, et al. | : | |

ATLAS DATA PRIVACY          :          CIVIL ACTION
CORPORATION, et al.         :
                            :
          v.                :
                            :          NO. 24-8451
COMPACT INFORMATION SYSTEMS,:
LLC, et al.                 :

_____

ATLAS DATA PRIVACY          :          CIVIL ACTION
CORPORATION, et al.         :
                            :
          v.                :
                            :          NO. 24-10600
DARKOWL, LLC, et al.        :


MEMORANDUM

Bartle, J.                                  November 26, 2024

        The plaintiffs in these 37 civil actions allege

violations of a New Jersey statute known as Daniel's Law.[1]

Before the court is the consolidated motion of defendants to

dismiss on the ground that Daniel's Law is unconstitutional on

its face.  Defendants assert that it abridges their freedom of

speech.

        Daniel's Law provides that judges, prosecutors and

other law enforcement officers as well as their immediate family

members ("covered persons") may request in writing that any

person, business, or association not disclose or make available

_____

1.  Daniel's Law as amended is codified as follows: N.J.S.A.
2C:20-31.1, 17:46B-1.1, 19:31-18:1, 46:26A-12, 47:1-17, 47:1A-
1.1, 47:1A-5, 47:1B-1, 47:1B-2, 47:1B-3, 47:1B-4, 56:8-166.1,
56:8-166.3.

their home addresses and unpublished telephone numbers.  It
creates a civil remedy for actual and punitive damages and
injunctive relief for non-compliance not only for covered
persons but also for their assignees.  There are also criminal
penalties.

Plaintiffs are Atlas Data Privacy Corporation
("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott
Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and
William Sullivan.  The named individual plaintiffs, who are
police officers or correctional officers, allege they are
"covered persons" under Daniel's Law.  Atlas is the assignee of
approximately 19,000 unnamed covered persons who used its
website to notify defendants to cease disclosure of their
personal contact information.  The defendants include real
estate businesses, direct-mailing and marketing companies, data
brokers, and other entities that provide fundraising support to
charities and other non-profits.[2]  According to plaintiffs,
defendants are entities which continued to make available their
home address and unlisted phone numbers in violation of Daniel's
Law.  There is no allegation that this information was
untruthful or that defendants obtained it illegally.

---

2.   There are also named as defendants ten "Richard Roes" and
ten "ABC Companies" in each complaint.

I.

In or about February 2024 and thereafter, plaintiffs filed these actions in the Superior Court in a number of different counties in New Jersey.  Defendants, pursuant to 28 U.S.C. §§ 1441 and 1446, removed the actions to the United States District Court for the District of New Jersey on the ground that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a).  The individual plaintiffs are citizens of New Jersey while Atlas, a corporation, is a citizen of both Delaware and New Jersey.  All defendants are citizens of states other than New Jersey and Delaware.  There is no dispute that the requisite amounts in controversy have been satisfied.

All of the judges of the District of New Jersey recused themselves.  On April 2, 2024, the Chief Judge of the United States Court of Appeals for the Third Circuit reassigned these and all related actions to the undersigned pursuant to 28 U.S.C. § 292(b).  E.g., Order, Atlas Data Privacy Corp. v. Blackbaud, Inc., Civil Action No. 24-3993 (D.N.J. April 2, 2024) (Doc. No. 13).

This court held several status conferences in these and other reassigned Daniel's Law cases at which defendants made it known that they intended to challenge Daniel's Law on various

grounds.[3]  Some also maintained that subject matter jurisdiction was absent.  The court, in an effort to proceed in an orderly fashion, stayed all these actions except for motions to remand for lack of subject matter jurisdiction and motions to dismiss on the ground of facial unconstitutionality.  The court thereafter remanded 39 Daniel's Law cases for lack of diversity jurisdiction.  It denied remand in one case, Atlas Data Privacy Corp. v. MyHeritage Ltd., Civil Action No. 24-4392, because of fraudulent joinder of a non-diverse defendant.  Memorandum at 31, Atlas Data Privacy Corp. v. MyHeritage Ltd., Civil Action No. 24-4392 (D.N.J. Nov. 20, 2024) (Doc. No. 52).[4]  The consolidated motion being decided here relates to the actions for which no challenge to subject matter jurisdiction is pending.

The court gave notice of these actions to the Attorney General of New Jersey, who intervened.  See 28 U.S.C. § 2403(b); Fed. R. Civ. P. 5.1(b).  With the court's permission, the

---

3.  On March 25, 2024, even before the status conferences, Delvepoint, LLC, the defendant in one of the cases, had moved to dismiss.  Atlas Data Privacy Corp. v. Delvepoint, LLC, Civil Action No. 24-4096 (Doc. No. 3).

4.  In Atlas Data Privacy Corp. v. Thomson Reuters Corp., Civil Action No. 24-4269 (D.N.J. filed Mar. 27, 2024), the court granted remand on the ground that non-diverse defendants Thomson Reuters Holdings and Thomson Reuters Applications had not proven fraudulent joinder.  The court has granted these defendants leave to file a motion for reconsideration on or before December 2, 2024.

National Association of Assistant United States Attorneys, the
New Jersey State Policemen's Benevolent Association, Inc., and
the National Association of Police Organizations filed an amicus
brief.  E.g., Brief for the Nat'l Ass'n of Assistant U.S. Att'ys
et al. as Amici Curiae, Atlas Data Privacy Corp. v. Lightbox
Parent, L.P., Civil Action No. 24-4105 (D.N.J. Aug. 1, 2024)
(Doc. No. 47-1).

## II.

The complaints recite and the court at the outset
takes judicial notice of the tragic circumstances that led to
the passage of Daniel's Law.  In July 2020, a disgruntled lawyer
who had litigated before United States District Judge Esther
Salas sought to assassinate her at her home in New Jersey.
Esther Salas, My Son Was Killed Because I'm a Federal Judge,
N.Y. Times (Dec. 8, 2020), https://www.nytimes.com/
2020/12/08/opinion/esther-salas-murder-federal-judges.html.
After finding her home address on the Internet, the lawyer
showed up on a Sunday evening armed and dressed as a delivery
driver.  Id.  Daniel Anderl, Judge Salas's twenty-year-old son,
answered the door and was fatally shot by the lawyer.  Id.  Her
husband and Daniel's father was severely wounded.  Id.   The
lawyer then fled.  In response to these crimes, the New Jersey
Legislature passed Daniel's Law in November 2020 and has amended
it thereafter.

-12-

Daniel's Law, as declared by the New Jersey
Legislature, was enacted to serve the following goals:

> This act shall be liberally
> construed in order to accomplish its purpose
> and the public policy of this State, which
> is to enhance the safety and security of
> certain public officials in the justice
> system, including judicial officers, law
> enforcement officers, child protective
> investigators[,] . . . and prosecutors, who
> serve or have served the people of New
> Jersey, and the immediate family members of
> these individuals, to foster the ability of
> these public servants who perform critical
> roles in the justice system to carry out
> their official duties without fear of
> personal reprisal from affected individuals
> related to the performance of their public
> functions.

N.J.S.A. 56:8-166.3 (emphasis added).

The law prohibits any entity when requested from
thereafter disclosing the home address and unpublished telephone
number of a covered person:

> Upon notification pursuant to
> paragraph (2) of this subsection, and not
> later than 10 business days following
> receipt thereof, a person, business, or
> association shall not disclose or re-
> disclose on the Internet or otherwise make
> available, the home address or unpublished
> home telephone number of any covered
> person . . . .

Id. at 56:8-166.1(a)(1).  The notice must be in writing and
state that the person seeking non-disclosure is a person
authorized to do so.  Id. at 56.8-166.1(2).  A "covered person"
is defined as "an active, formerly active, or retired judicial

officer, law enforcement officer, or child protective
investigator . . ., or prosecutor and any immediate family
member residing in the same household as such [individual]."
Id. at 56:8-166.1(d).

"Disclose" means "to solicit, sell, manufacture, give,
provide, lend, trade, mail, deliver, transfer, post, publish,
distribute, circulate, disseminate, present, exhibit, advertise,
or offer" and includes "making available or viewable within a
searchable list or database, regardless of whether a search of
such list or database is actually performed."   Id.

The prohibition on disclosure is triggered, as noted
above, when a covered person transmits to an entity written
notice requesting non-disclosure.   The entity must comply with
the request no later than 10 business days after receipt.   Id.
If it does not, it is "liable to the covered person or the
covered person's assignee, who may bring a civil action in the
Superior Court."   Id. at 56:8-166.1(b) (emphasis added).   Under
Daniel's Law, an "[a]ssignee' means a person or entity to whom
or which an authorized person has assigned, in writing, a
covered person's right to bring a civil action for violation of
subsection a. of this section."[5]   Id. at 56:8-166.1(d).

_____

5.   Covered persons may also request through the New Jersey
Office of Information Privacy that public agencies redact or
cease to disclose home addresses.   Public agencies shall redact
such information no later than 30 days after the request has

Non-compliance carries a monetary penalty and the
award of appropriate equitable relief.  The court shall award:

> (1) actual damages, but not less than
>     liquidated damages computed at the
>     rate of $1,000 for each violation of
>     this act;
> (2) punitive damages upon proof of
>     willful or reckless disregard of the
>     law;
> (3) reasonable attorney's fees and other
>     litigation costs reasonably incurred;
>     and
> (4) any other preliminary and equitable
>     relief as the court determines to be
>     appropriate.

Id. at 56:8-166.1(c).  In addition, Daniel's Law provides for
criminal liability.[6]

---

been approved by the Office of Information Privacy.  N.J.S.A.
47:1B-2.

6.    Daniel's Law provides:

> Upon notification pursuant to subsection c. of
> this section, and not later than 10 business days
> after receipt thereof, a person shall not
> knowingly, with purpose to expose another to
> harassment or risk of harm to life or property,
> or in reckless disregard of the probability of
> such exposure, post, repost, publish, or
> republish on the Internet, or otherwise make
> available, the home address or unpublished home
> telephone number of any covered person, except in
> compliance with any court order, law enforcement
> investigation, or request by a government agency
> or person duly acting on behalf of the agency.

N.J.S.A. 2C:20-31.1(b).

It also provides that: "[a] reckless violation of
subsection b. is a crime of the fourth degree.  A purposeful

In limited circumstances, Daniel's Law exempts certain governmental and other entities from the prohibition against the disclosure of a home address—but not the home telephone number—of a covered person.  Id. at 47:1B-3.  For example, a county recording officer is not required to redact the home address of a covered person from property records which are publicly available.  Id. at 47:1B-3(a)(2).  Similarly, a government agency may disclose the home address of a covered person to a third-party contractor but only for the purposes of carrying out its contract with the agency.  Id. at 47:1B-3(a)(5).

### III.

Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move to dismiss the plaintiffs' complaints on the ground that Daniel's Law is unconstitutional on its face.  As stated in Neitzke v. Williams, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  490 U.S. 319, 326 (1989).  The court must accept as true all well-pleaded facts in the complaints.  Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175, 195 (2024).  The court may also consider exhibits attached to the complaints and take judicial notice of matters of public record.  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d

---

violation of subsection b. is a crime of the third degree."  Id. at 2C:20-31.1(d).

1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357 (2d ed. 1990)).

The eight individual plaintiffs, two of whom are correctional officers and six of whom are police officers, allege that they were threatened with violence as a result of his or her public service.[7]  For present purposes, these allegations must be accepted as true.  After Daniel's Law was

---

7.   Officer Jane Doe-1 is a law enforcement officer who was surveilled along with her young child at her home by a major criminal organization that she was investigating.

Officer Jane Doe-2 is a correctional officer who discovered a note left behind by an inmate in the correctional facility's law library that contained her full name and home address.

Detective Edwin Maldonado, a law enforcement officer, moved after receiving death threats from the criminal organization Mara Salvatrucha-13 ("MS-13") at his home.  When MS-13 could not locate him at his new address, they targeted his mother and attempted to burn down her building.

Sergeant Scott Maloney and Officer Justyna Maloney are both law enforcement officers who received death threats and demands for ransom by phone after Officer Maloney's encounter with a civilian was filmed and posted online.  Two individuals were arrested after they were spotted by a neighbor circling the Maloneys' house, armed and wearing ski masks.

Detective Patrick Colligan, during his 32 years in law enforcement, has received numerous threats targeted at him and his family.  He has a surveillance camera and alarm system and trained his family how to respond to an attack on his home.

Officer Peter Andreyev, a law enforcement officer, has received numerous death threats and threats of violence targeted at himself and his family members.

Officer William Sullivan, a correctional officer, has likewise received death threats and threats of violence directed at himself and his family.

enacted, each individual plaintiff sent defendants written
notices requesting that defendants cease disclosing or re-
disclosing his or her home address and unlisted telephone
number.

Atlas owns and operates an online platform for covered
persons to identify data brokers and send written notices.  To
use the service, covered persons must sign up for an account and
set up an email address with Atlas.  They can then use the
platform to identify which entities are disclosing their
personal information and send written notices to those entities
using their Atlas email account.  Approximately 19,000 covered
persons signed up with Atlas and used its platform to send
written notices to defendants.

In exchange for using the platform, these covered
persons agreed to Atlas's terms of service.  Those terms of
service state that, upon receipt of written notice from Atlas, a
covered person using Atlas's platform is "deemed . . . to have
irrevocably assigned to [Atlas] all of [his or her] rights to
bring a claim (and seek damages, other legal remedies, and fees,
costs, and litigation expenses) for violations of [his or her]
rights under" Daniel's Law.  The terms of service further
provide that "[Atlas] will have the exclusive right to bring
such civil enforcement actions" after assignments take place.
At that point, these covered persons have assigned absolutely

their claims under Daniel's Law to Atlas.  Under their agreement
with Atlas, Atlas will remit 65% of any recovery to the covered
persons and retain 35% for itself.

Atlas and the individual plaintiffs claim that
defendants never responded to the written notices and never
redacted the personal information of the individual plaintiffs
or of the 19,000 unnamed covered persons who have assigned their
claims to Atlas.

IV.

The First Amendment to the Constitution, on which
defendants rely, states in relevant part: "Congress shall make
no law . . . abridging the freedom of speech . . . ."  This
constitutional prohibition also applies to the laws of the
states through the due process clause of the Fourteenth
Amendment.  <u>Manhattan Cmty. Access Corp. v. Halleck</u>, 587 U.S.
802, 808 (2019).  To succeed on a facial challenge in a First
Amendment case, the party making the challenge must establish
that "the law's unconstitutional applications substantially
outweigh its constitutional ones." <u>Moody v. NetChoice, LLC</u>, 144
S. Ct. 2383, 2397 (2024).

The court will quickly dispose of the plaintiffs'
first argument that Daniel's Law is regulating only data and
therefore is not restricting speech.  If plaintiffs are correct,
there is no First Amendment issue to be resolved.  The Supreme

-19-

Court has described speech as expressive activity intended and reasonably understood as communicative. Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 294 (1984). If, for example, defendants simply published statistics compiled by the Census Bureau, the information would probably be characterized as data. That is not what is happening here. Instead, the home addresses and unlisted phone numbers being disseminated are tied to specific persons. In other words, the defendants are telling the world that Police Officer Jane Jones resides at 123 Main Street, Camden and can be reached at 609-000-0000.

If Daniel's Law limits speech, plaintiffs assert that the law simply restricts commercial speech which is subject to a lesser standard of judicial scrutiny and is afforded less protection under the First Amendment than other forms of speech. Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 562-63 (1980). The Supreme Court has defined commercial speech as "expression related solely to the economic interests of the speaker and its audience," that is expression which serves the economic interests of both the speaker and consumer. Id. at 561 (emphasis added). The Court has also described commercial speech as "speech that does no more than propose a commercial transaction." United States v. United Foods, Inc., 533 U.S. 405, 409 (2001). Our Court of Appeals has observed that commercial speech is generally found in

advertising for the sale of goods and services.  U.S.
Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914,
933 (3d Cir. 1990).

Commercial speech may be restricted when the message
is either inaccurate or misleading or when the message promotes
unlawful activity.  Cent. Hudson, 447 U.S. at 566.  Otherwise it
may be limited only where the government's interest in
regulating such speech is substantial, the government's
regulation directly advances that interest, and the regulation
is no more extensive than necessary.  Id. at 571-72.  This level
of review of commercial speech is generally called intermediate
scrutiny.  Greater Phila. Chamber of Com. v. City of Phila., 949
F.3d 116, 137-38 (3d Cir. 2020).

While Daniel's Law includes to "sell" and to
"advertise" within the definition of "disclose," they are merely
two verbs among many that are enumerated.  The definition also
encompasses to "give, . . . post, . . . disseminate, [and]
exhibit."  In addition, "disclose" in Daniel's Law means to make
"available or viewable within a searchable list or database."
N.J.S.A. 56:8-166.1(d).  The Supreme Court has explained that
commercial speech must relate solely to the economic interests
of its speaker and its audience.  Daniel's Law allows covered
persons to prevent the dissemination of certain personal
information regardless of the means or reasons for the

dissemination.  Its stated purpose in limiting expression is to enhance the safety and security of judges, prosecutors, and law enforcement officers and to foster their ability to carry out their duties without fear of reprisal.  The expression in issue here is not about the economic interests of the plaintiffs, the defendants, or the public, let alone solely about their economic interests.  The speech certainly does not propose a commercial transaction.  Daniel's Law, in this court's view, does not concern commercial speech.

The court must decide whether Daniel's Law is content-based or content-neutral on its face since the level of judicial scrutiny will depend on this distinction.  See Reed v. Town of Gilbert, 576 U.S. 155, 166 (2015).  The Supreme Court has explained that "government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  Id. at 163. Speech is content-based when it is regulated by subject matter, when there are restrictions on a particular viewpoint, or when there is a prohibition of a particular topic.  Id. at 169.  In contrast, a law is content-neutral when it is "justified without reference to the content of the regulated speech."  Bartnicki v. Vopper, 532 U.S. 514, 526 (2001) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)).

-22-

Daniel's Law authorizes covered persons to request non-disclosure of their home addresses and unpublished phone numbers.  It clearly regulates particular subject matter.  Accordingly, Daniel's Law is content-based.

The Supreme Court's more recent decision in City of Austin v. Reagan Nat'l Advertising of Austin, LLC, 596 U.S. 61 (2022), cited by plaintiffs, does not mandate a contrary result.  There, the Court upheld the constitutionality of a city ordinance regulating on-premises signs differently than off-premises signs.  The ordinance dealt with such matters as their size, illumination and location.  The Court ruled that the ordinance was "agnostic as to content" and thus was content neutral so as to be subject to intermediate and not strict scrutiny.  The facts in City of Austin contrast markedly from the situation here.  Id. at 69-71.

As Daniel's Law limits content-based speech, the defendants maintain that it is subject to strict scrutiny.  Under that standard, the law would be "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests."  Reed, 576 U.S. at 163.

Plaintiffs urge that a somewhat different analysis should be applied in deciding the constitutionality of Daniel's Law because Daniel's Law is a privacy statute.  Plaintiffs

-23-

describe it as creating a right of action for judges,
prosecutors and other law enforcement officers to redress the
invasion of their privacy.  It provides that they may notify
entities, large and small, to refrain from disclosing their home
addresses and unlisted phone numbers upon 10 days written
notice.  If an entity fails to adhere to the request, a covered
person or his or her assignee may sue for actual damages but not
less than $1,000 in liquidated damages as well as for injunctive
relief.  Plaintiffs cite Daniel's Law as part of the long
history of common law torts and statutes whose purpose is to
afford redress to persons whose privacy is invaded from
disclosure of personal information, albeit truthful, that is not
of public interest.  See, e.g., Samuel D. Warren & Louis D.
Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193 (1890);
William L. Prosser, Privacy, 48 Cal. L. Rev. 383 (1960).

Our Court of Appeals recognized in 2000 that a
significant range of people including public officials,
performers and ordinary folks regard home addresses as private
information.  The court understood this reality even while
referencing the wide availability of telephone directories at
the time.  Our Court of Appeals also wrote that the Freedom of
Information Act exempts home addresses from disclosure as it
would be a "clearly unwarranted invasion of privacy." Paul P.
v. Farmer, 227 F.3d 98, 101 (3d Cir. 2000); 5 U.S.C.

§ 552(b)(6).  If anything, the sentiment that such information is private has intensified as most people today have unlisted numbers and the presence of telephone directories that include addresses is virtually a thing of the past.

The defendants counter that Daniel's Law is not a privacy law but rather a law to provide for the safety and security of covered persons.  The court rejects this narrow reading.  Privacy has generally been defined as the right to be let alone.  Warren & Brandeis, The Right to Privacy, supra, at 195 (quoting Cooley on Torts 29 (2d ed. 1888)).  The New Jersey Legislature has concluded that covered persons should have the right to be let alone insofar as their home addresses and unpublished phone numbers are concerned.  The reason the Legislature has protected this information is not only to enhance the safety and security of covered persons but also to safeguard them from the fear of reprisal for doing their jobs. Daniel's Law is analogous to the long-standing common law tort for invasion of privacy for disclosure of the intimate details of a person's private life.  There the law allows for damages for disclosure of such information in order to compensate for causing embarrassment and humiliation.  Romaine v. Kallinger, 537 A. 2d 284, 292 (N.J. 1988).  Here, Daniel's Law furnishes a remedy for disclosing certain private information and exposing

covered persons to fear of reprisal and to personal danger.
Whatever else it may be, Daniel's Law is a privacy statute.

The Supreme Court has recognized the tension that
exists between privacy law and the right of freedom of speech
and the press under the First Amendment.  It has decided a
number of cases where it has had to resolve this tension.  The
cases that have been cited focus on state statutes which block
the dissemination of the identity of rape victims and of
juvenile offenders even when the information was legally
obtained.  Some involved criminal statutes while others
concerned statutes providing for civil redress for persons whose
privacy has been invaded.  See, e.g., The Florida Star v.
B.J.F., 491 U.S. 524 (1989); Smith v. Daily Mail Publ'g Co., 443
U.S. 97 (1979); Oklahoma Publ'g Co. v. Oklahoma Cnty Dist. Ct.,
430 U.S. 308 (1977); Cox Broad. Corp. v. Cohn, 420 U.S. 469
(1975).  In all of these cases the Supreme Court ruled that the
First Amendment carried the day over the right to privacy.  See
also Bowley v. City of Uniontown Police Dept., 404 F.3d 783 (3d
Cir. 2005).  Nonetheless, the Court has continually stressed
that it was not announcing a blanket rule that free speech must
always prevail and that publication of truthful and lawfully
obtained information can never be blocked or punished.  The
Florida Star, 491 U.S. at 532.  It has emphasized that each case

must be decided on its particular facts.  _Id._ at 533.  It

reiterated in _The Florida Star_:

> Our holding today is limited.  We do not
> hold that truthful publication is
> automatically constitutionally protected, or
> that there is no zone of personal privacy
> within which the State may protect the
> individual from intrusion by the press, or
> even that a State may never punish
> publication of the name of a victim of a
> sexual offense.

_Id._ at 541.

As noted above, defendants assert this court should

apply strict scrutiny to Daniel's Law, a standard which the

Supreme Court has applied in _Reed_ and other cases.  The words

"strict scrutiny" and the strict scrutiny standard of review,

however, do not appear in the above cited Supreme Court

decisions involving the right to privacy.  Instead, the Supreme

Court has outlined three specific factors that a court must

consider in balancing the right of privacy against the right of

free speech.  In _The Florida Star_, which involved a civil

statute imposing damages for the publication of the name of a

rape victim, the Court established that the first inquiry is

whether the information is lawfully obtained and is of public

significance.[8]  _Id._ at 536.  A court must then determine whether

---

8.   In these pending actions, it is not contested that
defendants obtained the covered persons' home addresses and
unlisted phone numbers lawfully.  Accordingly, the court need
not consider this issue.

the law in question serves "a need to further a state interest
of the highest order."  Id. at 537 (quoting Daily Mail, 443 U.S.
at 103).  Finally, the court must decide whether the statute
serves "the significant interests" which the state purports to
advance and is not underinclusive.  Id. at 540.  Since Daniel's
Law is a privacy law, this is the proper analysis to be applied
in the pending cases.

     First, the court concludes that the home addresses and
unpublished phone numbers are not matters of public
significance.  The narrow limitation under Daniel's Law
constitutes but a tiny part of the life story of covered persons
and is not information that is necessary or pertinent for public
oversight.  Daniel's Law does not inhibit in any meaningful way
the public's knowledge of public officials or its ability to
hold them accountable for their performance and behavior.  In
contrast to the limited scope of Daniel's Law, the restricted
speech in the cited Supreme Court cases concerned criminal
activity and its prosecution.  The public clearly has a vital
interest in such information while the same cannot be said of
the speech governed by Daniel's Law.

     The defendants raise the specter of a number of
hypotheticals where the home address or the unlisted phone
number of a covered person may be newsworthy and thus of public
significance.  If any of these hypotheticals ever comes to pass,

the defendants' remedy is to challenge Daniel's law as unconstitutional as applied.  See United States v. Hansen, 599 U.S. 762, 784-85 (2023).

Second, the court must determine whether Daniel's Law serves a need to further a state interest of the highest order. The New Jersey Legislature declared in Daniel's Law itself that its purpose was to enhance the safety and security of judges, prosecutors, and other law enforcement officers so that they are able to carry out their official duties without fear of personal reprisal.  The court need not tarry by reciting in detail the support for the well-known fact, amply documented by the record here, that in recent years judges, prosecutors, police, correctional officers, and others in law enforcement have been the subject of an ever increasing number of threats and even assassinations.  Some of these threats and assassinations, as alleged in the complaints and of which the court takes judicial notice, have been facilitated by malefactors obtaining the home address or unlisted phone number of their targets.  Indeed, the immediate motivation for the passage of Daniel's Law was the tragedy that occurred when an individual with grievances against Judge Salas obtained her home address from the Internet, proceeded to her home with the intent to kill her, and killed her son and wounded her husband.  None of the parties appears to contest that Daniel's Law, in aiming to protect covered persons

from fear, threats, injury and death, serves a need to further a state interest of the highest order.

Finally, the defendants assert that Daniel's Law fails because it is underinclusive.  By invoking underinclusiveness, they mean that New Jersey is not really pursuing or the law is not advancing its compelling state interest in protecting judges, prosecutors, and other law enforcement officers from threats and assassinations.  See Williams-Yulee v. Florida Bar, 575 U.S. 433, 448-49 (2015).  Defendants reference that Daniel's Law has a number of exemptions allowing for disclosure of home addresses.  The law, for example, does not block access to home addresses which appear on property records or on voter registration lists.  The short answer is that this type of information is generally more difficult to extract from public records than information found on the Internet.  The Supreme Court has emphasized that the right of privacy in compiled or computerized information does not evaporate simply because the information may be found in other places.  It explained that there is "a vast difference between public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information."  U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 764 (1989).  The fact that the home

-30-

addresses and unlisted phone numbers of individual covered persons may be discovered elsewhere in various scattered locations does not make Daniel's Law underinclusive.

The defendants also fault the law because it treats private and business entities more strictly than public agencies. The law does not limit the use of information by governmental agencies in the same way it does private entities. In some instances, the availability of home addresses and even phone numbers is necessary for the government and society to function. It also allows the State more time to remove information from public access. This is understandable considering the numerous state agencies, counties, and municipalities which may hold such information. This reality does not make Daniel's Law underinclusive. See <u>Fraternal Order of Police v. City of Phila.</u>, 812 F.2d 105, 118 (3d Cir. 1987).

The distinctions made in Daniel's Law are sound—not arbitrary or discriminatory. All non-governmental entities are treated the same. The New Jersey Legislature has had to grapple with a very complex and important issue in trying to protect covered persons who seek to uphold the rule of law and who by the very nature of their jobs are in the public eye. The Supreme Court has dictated that each case must be decided on its own facts. It has never ruled on a case like the ones now before this court. The law is not unconstitutional simply

because the Legislature may not have come up with a complete
answer to the problem of the safety, security, and fear of
reprisal of covered persons.  It acted in response to the
attempted assassination of Judge Salas, the murder of her son,
and the wounding of her husband, all of which resulted after an
assailant obtained her home address through the Internet.  The
special although not total focus of Daniel's Law is to prevent
the use of the Internet as the source of intelligence to
facilitate other such tragedies.  The Legislature cannot be
faulted for its approach based on a very real set of facts,
which unfortunately are not unique.  The perfect is not the
enemy of the good.

    The Supreme Court in Williams-Yulee, supra, did
recognize that underinclusiveness can be a red flag in
determining whether a law limiting speech advances a state
interest.  In that case, the Court upheld against an
underinclusive First Amendment challenge a regulation of the
Florida Bar prohibiting a judicial candidate from personally
soliciting money for her election.  Williams-Yulee, 575 U.S. at
455-56.  This narrowly drawn regulation did not prevent the
candidate from establishing a committee of lawyers to raise
money for her campaign and did not ban her from sending thank-
you notes to her contributors.  Nor did it require an elected

judge to recuse in any case in which a lawyer-contributor appeared.  The Court observed:

> A State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns.  We have accordingly upheld laws – even under strict scrutiny – that conceivably could have restricted even greater amounts of speech in service of their stated interests.

Id. at 449.  The present situation is no different.  Daniel's Law is not underinclusive because it may not address "all aspects of the problem in one fell swoop."  Rather, it does materially promote the state's interest of the highest order in protecting judges, prosecutors and other law enforcement officers from harm.

The defendants challenge other aspects of Daniel's Law.  They criticize the law's sweep in not limiting notice of non-disclosure to situations where there are "true threats."  By then, any notice not to disclose a home address and unlisted telephone number is probably too late.  That would be analogous to closing the barn door after the horse has left.  The Legislature was not unreasonable in determining that the law to be effective must allow covered persons to request non-disclosure preemptively.  Defendants also argue that the definition of "disclose" is too broad.  The law reads as it does to advance the state's significant interest in protecting the

lives and well-being of covered persons.  This argument is not
persuasive.

Defendants further suggest that a protective order
would be a sufficient remedy.  It is questionable that the entry
of a protective order would be effective after the information
is released.  The court disagrees that this legislative scheme
is invalid.

Defendants take issue with the assignment provision of
Daniel's Law.  The Legislature made a rational decision in
allowing covered persons to assign their claims.  In its view,
it will make the enforcement more effective.  It is not hard to
imagine that many covered persons may find it too difficult, too
cumbersome, or too expensive to hire counsel or to proceed
against dozens of defendants on their own without an assignee.

The court has considered the various other challenges
defendants raise to the form of the law.  They are all without
merit.  Defendants are simply disagreeing with the Legislature's
policy choices.  Reasonable people of course may have different
views about those choices.  Simply because the law could have
been written differently does not make it unconstitutional.

V.

The defendants in addition assert that Daniel's Law is
unconstitutional on its face because it is a strict liability
statute, that is because it provides for actual or liquidated

damages for non-compliance without regard to fault.  It is the
fallback position of the defendants that plaintiffs must
establish that the defendants had the specific intent to violate
the requirements of Daniel's Law.  Plaintiffs and the New Jersey
Attorney General counter that the standard of liability is
negligence.  They take the position that plaintiffs must prove
that defendants acted unreasonably in failing to take down the
requested home addresses and unlisted phone numbers.

Liability without fault is known both to the civil and
criminal law.  See, e.g., Smith v. California, 361 U.S. 147, 150
(1989).  The Supreme Court, however, has carved out an exception
against strict liability where a law restricts the freedom of
speech.  The Court has held unconstitutional an ordinance which
provided for strict criminal liability against booksellers who
had an obscene or indecent writing or book in their places of
business.  Id. at 155.  Likewise, the Court in The Florida Star
ruled invalid under the First Amendment a civil privacy statute
which provided for a negligence per se standard of culpability.
491 U.S. at 539-40, 541 n.9.

Daniel's Law provides a covered person or the person's
assignee with a civil remedy.  Relief is only available after a
covered person takes the initiative to transmit a written notice
of non-disclosure to an entity.  The covered person must also
state he or she is a person authorized to request non-

-35-

disclosure.  The entity has 10 business days thereafter not to
disclose or not to make available the home address and
unpublished phone telephone number of the covered person.
N.J.S.A. 2C:20-21.1(6).  For failure to comply, the court shall
award to a covered person or his or her assignee: (1) actual
damages but not less than liquidated damages at the rate of
$1,000 for each violation; (2) punitive damages upon proof of
willful or reckless disregard of the law; and (3) preliminary
and equitable relief.  N.J.S.A. 56:8-166.1(c).

     The standard for determining culpability under
Daniel's Law for actual or liquidated damages is of course a
matter of state law.  See Erie R.R. Co. v. Tompkins, 304 U.S.
64, 78 (1938).  To the extent that the state law itself does not
on its face set forth the standard, this court must look to its
construction by the New Jersey Supreme Court.  If that court has
not had occasion to address the issue, this court must predict
how it would rule.  Packard v. Provident Nat'l Bank, 994 F.2d
1039, 1046 (3d Cir. 1993).

     In deciding what standard applies, the court must keep
in mind relevant principles of statutory construction applied in
New Jersey.  To this end, statutes must be construed to conform
to the Constitution if the statute is reasonably susceptible to
such a construction.  State v. Carter, 255 A.3d 1139, 1153 (N.J.
2021); State v. Burkert, 174 A.3d 987, 998 (N.J. 2017).  Courts

-36-

must also avoid an interpretation of a statute which leads to absurd results.  N.J. Republican State Comm. v. Murphy, 236 A.3d 898, 908 (N.J. 2020).

Daniel's Law does not state explicitly what standard of liability applies for actual or liquidated damages.  However, it does require that the offending conduct amount to "willful or reckless disregard of the law" in order for the award of punitive damages.  It would be nonsensical and effect an absurd result for the court to read into Daniel's Law a standard of civil liability for actual or liquidated damages which requires the same degree of culpability as or a higher degree of culpability than the standard of civil liability enunciated in the statute for punitive damages.  Thus, liability for actual or liquidated damages does not demand a showing of specific intent or of willful or reckless conduct when recovery of punitive damages may occur only with proof of willful or reckless conduct.

That leaves the question whether the standard for actual and liquidated damages is either liability without fault or negligence.  If Daniel's Law imposes strict liability, it likely runs afoul, as a privacy statute, of the above cited precedents of the United States Supreme Court.  The Court has invalidated strict liability statutes that restrict speech. See, e.g., The Florida Star, 491 U.S. at 541.  Based on New

Jersey precedents, this court must read the Daniel's Law to
avoid this outcome if it is reasonably susceptible to a
constitutional construction.

To ascribe a strict liability standard to Daniel's Law
not only would likely render the law unconstitutional but also
could lead to absurd results.  Under such a standard, a noticed
entity would be liable even if it would be unreasonable or
impossible under the circumstances to meet the statutory 10 day
take-down deadline.  Damages under this scenario would have to
be awarded if a hurricane or other natural disaster had taken
place which totally impeded the ability of the noticed entity to
comply in a timely manner.  The same result would be forthcoming
if a fire had destroyed a mailed notice shortly after receipt
and the direction for non-disclosure was lost through no one's
fault before it could be implemented.  The noticed entity would
also be on the hook if its computer system failed after having
received thousands of notices at one time, and it was unable to
take down all the information within the allotted period.

Daniel's Law is reasonably susceptible to a
construction with a negligence standard of liability.  It is a
privacy statute analogous to the common law tort of invasion of
privacy of the intimate details of a person's life.  The New
Jersey Supreme Court has explained that recovery for this tort
requires proof of "the unreasonable publication of private

facts." <u>Romaine</u>, 537 A.2d at 291-92.  This is a negligence test.  There is no reason to think that the New Jersey Supreme Court would not apply the same test here as it did in <u>Romaine</u>.[9] Daniel's Law must be read as imposing liability only if a defendant unreasonably disclosed or made available the home addresses and unlisted telephone numbers of covered persons after the statutory deadline had expired.

In summary, the court concludes that Daniel's Law does not mandate a specific intent standard of liability or a standard of liability without fault for actual or liquidated damages.  The inclusion of a negligence standard of liability for actual or liquidated damages is a reasonable construction of Daniel's Law, avoids absurd results, is consistent with analogous New Jersey privacy law, and saves the law from constitutional repugnancy.

This court predicts that the Supreme Court of New Jersey would construe Daniel's Law as requiring a covered person or assignee to establish an entity's negligence in order to

---

9.   The New Jersey Model Civil Jury Charges classify the various privacy torts under the rubric "Intentional Torts."  New Jersey Courts, Model Civil Jury Charges System §§ 3.10-3.14, http:www.uscourts.gov/courts/civil/model-civil-jury-charges. This classification does not have the imprimatur of the New Jersey Supreme Court and cannot supersede <u>Romaine</u>.  <u>See</u> <u>Graphnet, Inc. v. Retarus, Inc.</u>, 269 A.2d 413, 423 (N.J. 2022).

obtain an award of actual or liquidated damages under N.J.S.A. 56:8-166.1(c)(1).

                              VI.

        The United States Supreme Court has declared that courts should decide cases on their particular facts and circumstances when they involve the interaction of privacy and the right of free speech with the caveat that any privacy statute restricting speech is likely unconstitutional if it imposes liability without fault.  At this stage of the pending cases, the court must accept as true the well-pleaded facts and may take judicial notice as appropriate of other facts.  After applying the legal analysis enumerated by the Supreme Court to the particular facts and circumstances presented here, Daniel's Law with its negligence standard of liability for actual or liquidated damages is constitutional on its face.  The speech that is restricted is not of public significance, the law imposing the restriction serves to further a need of the highest order of the State of New Jersey, and the law serves the significant interest of the State and is not fatally underinclusive.

The consolidated motion of the defendants to dismiss these actions on the ground that Daniel's Law is facially unconstitutional will be denied.

BY THE COURT:

/s/  Harvey Bartle III
                                    J.