Nos. 25-1555 through 25-1578; 25-1580 through 25-1593; 25-1676; and 25-1677
(Consolidated)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————

ATLAS DATA PRIVACY CORP., AS ASSIGNEE OF INDIVIDUALS WHO ARE COVERED
PERSONS; JANE DOE 1, A LAW ENFORCEMENT OFFICER; JANE DOE 2,
A LAW ENFORCEMENT OFFICER; EDWIN MALDONADO; SCOTT MALONEY;
JUSTYNA MALONEY; PATRICK COLLIGAN;
PETER ANDREYEV; AND WILLIAM SULLIVAN,

PLAINTIFFS-APPELLEES,

*v.*

WE INFORM LLC, ET AL.

DEFENDANTS-APPELLANTS.

On Appeal from the Order and Memorandum of the United States District Court
for the District of New Jersey dated November 26, 2024

## JOINT REPLY BRIEF OF APPELLANTS

———————————————

Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
**TROUTMAN PEPPER LOCKE LLP**
Suite 400, 301 Carnegie Center
Princeton, NJ 08540
(609) 452-0808
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

Marcel S. Pratt
Michael Berry
Anna Kaul
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 864-8500
prattm@ballardspahr.com
berrym@ballardspahr.com
kaula@ballardspahr.com

*Attorneys for Defendants-Appellants
RocketReach LLC (No. 25-1582); Deluxe
Corp. (No. 25-1559); PropertyRadar Inc.
(No. 25-1584); and DM Group Inc.
(No. 25-1558)*

*Attorneys for Defendants-Appellants
Thomson Reuters Enterprise Centre
GmbH and West Publishing Corp.
(No. 25-1570)*

*[Additional Counsel on Following Pages]*

*Counsel Continued from Cover Page*:

Robert T. Szyba
**SEYFARTH SHAW LLP**
620 Eighth Avenue, 32nd Floor
New York, NY 10018
(212) 218-5500
rszyba@seyfarth.com

*Attorneys for Defendants-Appellants
We Inform, LLC (No. 25-1555);
Infomatics, LLC (No. 25-1556); and
The People Searchers, LLC
(No. 25-1557)*

Clair E. Wischusen
**GORDON REES SCULLY MANSUKHANI
LLP**
291 W. Mt. Pleasant Avenue, Suite 3310
Livingston, NJ 070369
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendants-Appellants
Quantarium Alliance, LLC and
Quantarium Group, LLC (No. 25-1560)*

Derek L. Shaffer
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

-and-

Owen B. Smitherman
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
owensmitherman@quinnemanuel.com

*Attorneys for Defendant-Appellant
Yardi Systems, Inc. (No. 25-1561)*

Eric H. Lubin
**LoMURRO, MUNSON, LLC**
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, NJ 07728
(732) 414-0300
ELubin@lomurrolaw.com

*Attorneys for Defendants-Appellants
Digital Safety Products, LLC (No.
25-1562); Civil Data Research (No.
25-1563); and Scalable Commerce &
National Data Analytics (No. 25-1564)*

Ryan J. Cooper
Renier Pierantoni
**COOPER, LLC – COUNSELORS AT LAW**
108 N. Union Ave., Suite 4
Cranford, NJ 07016
ryan@cooperllc.com
renier@cooperllc.com

*Attorneys for Defendant-Appellant
Labels & Lists, Inc. (No. 25-1565)*

Jason A. Spak
**FISHERBROYLES LLP**
6360 Broad Street #5262
Pittsburgh, PA 15206
(412) 401-2000
jason.spak@fisherbroyles.com

*Attorneys for Defendant-Appellant
Innovis Data Solutions, Inc.
(No. 25-1566)*

John E. MacDonald
**CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP**
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
(609) 454-0096
jmacdonald@constangy.com

*Attorneys for Defendants-Appellants
Accurate Append, Inc. (No. 25-1567);
and Restoration of America, Inc. and
Voter Reference Foundation, LLC
(No. 25-1572)*

Samantha L. Southall
**BUCHANAN INGERSOLL & ROONEY PC**
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
(215) 665-3800
samantha.southall@bipc.com

*Attorneys for Defendants-Appellants
Zillow Inc. and Zillow Group, Inc.
(No. 25-1568)*

Frederick W. Alworth
Kevin R. Reich
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
falworth@gibbonslaw.com
kreich@gibbonslaw.com

*Attorneys for Defendant-Appellant*
*Equimine, Inc. (No. 25-1569)*


Richard J.L. Lomuscio
**STINSON LLP**
100 Wall Street, Suite 201
New York, NY 10005
(646) 883-7471
richard.lomuscio@stinson.com

*Attorneys for Defendant-Appellant*
*i360, LLC (No. 25-1573)*

Michael P. O'Mullan
**RIKER DANZIG LLP**
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 451-8477
momullan@riker.com

*Attorneys for Defendant-Appellant*
*Melissa Data Corporation*
*(No. 25-1571)*


David E. Sellinger
Aaron Van Nostrand
**GREENBERG TRAURIG LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 443-3557
sellingerd@gtlaw.com
vannostranda@gtlaw.com

*Attorneys for Defendants-Appellants*
*GoHunt, LLC, GoHunt Management*
*Holdings, LLC, and GoHunt*
*Management Holdings II, LLC*
*(No. 25-1574)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

Jennifer Fiorica Delgado
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, NJ 07068
(646) 414-6962
jdelgado@lowenstein.com

*Attorneys for Defendant-Appellant*
*AccuZip, Inc. (No. 25-1575)*

Matthew S. AhKao
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
One Riverfront Plaza, Suite 800
Newark, NJ 07102
(973) 577-6260
Matthew.AhKao@lewisbrisbois.com

*Attorneys for Defendant-Appellant*
*Synaptix Technology, LLC*
*(No. 25-1576)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Joy Rockwell Enterprises, Inc. d/b/a*
*PostcardMania PCM LLC (No. 25-1577)*

J. Timothy McDonald
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
(404) 541-2906
Tim.McDonald@ThompsonHine.com

-and-

Steven G. Stransky
(admission pending)
127 Public Square, #3900
Cleveland, OH 44114
(216) 566-5500
Steve.Stransky@ThompsonHine.com

*Attorneys for Defendant-Appellant*
*Fortnoff Financial, LLC (No. 25-1578)*

Clair E. Wischusen
**GORDON REES SCULLY MANSUKHANI LLP**
291 W. Mt. Pleasant Avenue, Suite 3310
Livingston, NJ 07039
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendant-Appellant Nuwber, Inc. (No. 25-1581)*

H. Mark Stichel
**RKW, LLC**
10075 Red Run Blvd., 4th Floor
Owings Mills, MD 21117
(443) 379-8987
HMStichel@RKWlawgroup.com

*Attorneys for Defendant-Appellant E-Merges.com, Inc. (No. 25-1580)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant The Alesco Group, L.L.C. (improperly pled as Alesco AI, LLC, Alesco Marketing Solutions, L.L.C., Stat Resource Group Inc., and Response Solutions Group, LLC) (No. 25-1585)*

Stephen M. Orlofsky
Philip N. Yannella
Thomas P. Cialino
**BLANK ROME LLP**
300 Carnegie Center, Suite 220
Princeton, NJ 08540
(609) 750-2646
Stephen.Orlofsky@BlankRome.com
Philip.Yannella@BlankRome.com
Thomas.Cialino@BlankRome.com

*Attorneys for Defendant-Appellant Belles Camp Communications, Inc. (No. 25-1583)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Amerilist, Inc. (No. 25-1587)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Searchbug, Inc. (No. 25-1586)*

Kenneth D. Friedman
**MANATT, PHELPS & PHILLIPS, LLP**
7 Times Square
New York, NY 10036
(212) 790-4500
kfriedman@manatt.com

*Attorneys for Defendant-Appellant*
*Smarty, LLC d/b/a SmartyStreets, LLC*
*(No. 25-1589)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*US Data Corporation (No. 25-1588)*

Kelly M. Purcaro
Kory Ann Ferro
**GREENSPOON MARDER LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ 07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

Kiran Raj
**RAJ FERBER PLLC**
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 827-9785
kiran@rajferber.com

*Attorneys for Defendant-Appellant
DarkOwl, LLC (No. 25-1591)*

Jared K. Levy
**WOOD, SMITH, HENNING & BERMAN
LLP**
400 Connell Drive, Suite 1100
Berkeley Heights, NJ 07922
(973) 265-9901
jlevy@wshblaw.com

*Attorneys for Defendants-Appellants
Compact Information Systems, LLC,
Accudata Integrated Marketing, Inc.,
Alumnifinder, ASL Marketing, Inc.,
College Bound Selection Services,
Deepsync Labs, Homedata, and Student
Research Group (No. 25-1590)*

Ronald L. Davison
**STARR, GERN, DAVISON & RUBIN, P.C.**
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
(973) 403-9200
rdavison@starrgern.com

*Attorneys for Defendant-Appellant
Lighthouse List Company, LLC
(No. 25-1593)*

Christopher Nucifora
Timothy M. Ortolani
**KAUFMAN DOLOWICH LLP**
Court Plaza North
25 Main Street, Suite 500
Hackensack, NJ 07601
(201) 708-8207
cnucifora@kaufmandolowich.com
tortolani@kaufmandolowich.com

*Attorneys for Defendant-Appellant Spy
Dialer, Inc. (No. 25-1592)*

Jared M. Wichnovitz
**LAW OFFICES OF JARED M.
WICHNOVITZ, P.C.**
50 Harrison Street, Suite 206
P.O. Box 631
Hoboken, NJ 07030
(732) 765-2157
jared@wichnovitzlaw.com

*Attorney for Defendant-Appellant
Greenlight Venture Corp.
(No. 25-1677)*

William Wendell Cheney, III
Andrew W. Sheppard
**FREEMAN MATHIS & GARY, LLP**
3 Executive Campus, Suite 350
Cherry Hill, NJ 08002
(856) 406-1268, 1262
wcheney@fmglaw.com
Andrew.sheppard@fmglaw.com

*Attorney for Defendant-Appellant
First Direct, Inc. (No. 25-1676)*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ...........................................................................1

ARGUMENT ..................................................................................3

I.      STRICT SCRUTINY GOVERNS THIS FACIAL CHALLENGE
TO A CONTENT-BASED SPEECH RESTRICTION ..................................3

II.     LESSER SCRUTINY IS NOT WARRANTED .............................9

     A.     The Law Does Not Regulate Commercial Speech..............................9

     B.     The Law Cannot Be Justified by "History and Tradition"................13

     C.     The Daily Mail Test Does Not Supplant Strict Scrutiny ...................16

     D.     Applying Strict Scrutiny Would Not Render Other Laws
Unconstitutional ...................................................................20

III.    THE LAW FAILS ANY LEVEL OF SCRUTINY......................................20

     A.     The Notice Provision Does Not Constitute Narrow
Tailoring .........................................................................21

     B.     The Law Improperly Permits Disclosures Posing Identical
Risks ............................................................................21

     C.     The Law's Other Features Dramatically Expand Its Sweep ...............24

     D.     Similar Laws Are More Narrowly Tailored........................................27

IV.    THE LAW HAS NO *MENS REA* REQUIREMENT AND
THEREFORE SHOULD BE INVALIDATED ...........................................28

CONCLUSION ..............................................................................31

CERTIFICATIONS ........................................................................49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sutton*,
   747 F. Supp. 3d 520 (E.D.N.Y. 2024) ...................................................9

*American Future Systems, Inc. v. Pennsylvania State University*,
   752 F.2d 854 (3d Cir. 1984) ...............................................................10

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) ............................................................11

*Ashcroft v. ACLU*,
   542 U.S. 656 (2004)........................................................................3, 25

*Ashcroft v. Free Speech Coalition*,
   535 U.S. 234 (2002).............................................................................25

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001)...............................................................................4

*Board of Trustees of State University of New York v. Fox*,
   492 U.S. 469 (1989).............................................................................10

*Boelter v. Advance Magazine Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) ................................................12

*Boelter v. Hearst Communications, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ................................................12

*Bolger v. Youngs Drug Products Corp.*,
   463 U.S. 60 (1983)...............................................................................11

*Brown v. Entertainment Merchants Association*,
   564 U.S. 786 (2011)..........................................................................3, 8

*Bruni v. City of Pittsburgh*,
   824 F.3d 353 (3d Cir. 2016) .............................................................7, 9

*Camp Hill Borough Republican Association v. Borough of Camp Hill*,
   101 F.4th 266 (3d Cir. 2024) ................................................................3

*Capra v. Thoroughbred Racing Association of North America, Inc.*,
    787 F.2d 463 (9th Cir. 1986) ...............................................................14

*City of Austin v. Reagan National Advertising of Austin, LLC*,
    596 U.S. 61 (2022)........................................................................5, 10

*Cox Broadcasting Corp. v. Cohn*,
    420 U.S. 469 (1975)....................................................................16, 19

*Dahlstrom v. Sun-Times Media, LLC*,
    777 F.3d 937 (7th Cir. 2015) .............................................................5, 6

*Davenport v. Washington Education Association*,
    551 U.S. 177 (2007).............................................................................7

*Dex Media West, Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) .............................................................11

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
    472 U.S. 749 (1985)...........................................................................17

*Evans-Aristocrat Industries, Inc. v. Newark*,
    380 A.2d 268 (N.J. 1977) ..................................................................30

*Florida Star v. B.J.F.*,
    491 U.S. 524 (1989)...........................................................18, 19, 24, 31

*Free Speech Coalition, Inc. v. Attorney General United States*,
    974 F.3d 408 (3d Cir. 2020) ..............................................................25

*Goldhagen v. Pasmowitz*,
    255 A.3d 1191 (N.J. 2021) .................................................................29

*Greater Philadelphia Chamber of Commerce v. City of Philadelphia*,
    949 F.3d 116 (3d Cir. 2020) ..............................................................11

*Hyde v. City of Columbia*,
    637 S.W.2d 251 (Mo. Ct. App. 1982) ................................................14

*IMDb.com v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ...........................................................18

iii

*Kallstrom v. City of Columbus*,
    136 F.3d 1055 (6th Cir. 1998) ....................................................15, 16

*A.A. ex rel. M.M. v. New Jersey*,
    341 F.3d 206 (3d Cir. 2003) ...............................................................15

*Mainstream Marketing Services, Inc. v. FTC*,
    358 F.3d 1228 (10th Cir. 2004) .........................................................21

*Martin v. City of Struthers*,
    319 U.S. 141 (1943)............................................................................21

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024)....................................................................7, 8, 9

*Moriarty v. Svec*,
    164 F.3d 323 (7th Cir. 1998) .............................................................19

*National Federation of the Blind v. FTC*,
    420 F.3d 331 (4th Cir. 2005) .............................................................21

*NetChoice, LLC v. Griffin*,
    2025 WL 978607 (W.D. Ark. Mar. 31, 2025)......................................8

*NetChoice, LLC v. Reyes*,
    748 F. Supp. 3d 1105 (D. Utah 2024)..................................................9

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)............................................................................26

*Ostergren v. Cuccinelli*,
    615 F.3d 263 (4th Cir. 2010) .............................................................24

*Packingham v. North Carolina*,
    582 U.S. 98 (2017)..............................................................................20

*Pitt News v. Pappert*,
    379 F.3d 96 (3d Cir. 2004) .................................................................23

*Project Veritas v. Schmidt*,
    125 F.4th 929 (9th Cir. 2025) ..............................................................6

*R.A.V. v. City of St. Paul,*
   505 U.S. 377 (1992).................................................................6

*Reed v. Town of Gilbert,*
   576 U.S. 155 (2015)......................................................3, 5, 6, 8

*Sable Communications of California, Inc. v. FCC,*
   492 U.S. 115 (1989)...............................................................27

*Saunders v. Hearst Television, Inc.,*
   711 F. Supp. 3d 24 (D. Mass. 2024)......................................12

*Schrader v. District Attorney of York County,*
   74 F.4th 120 (3d Cir. 2023) ............................................*passim*

*Smith v. Daily Mail Publishing Co.,*
   443 U.S. 97 (1979).................................................................17

*Sorrell v. IMS Health Inc.,*
   564 U.S. 552 (2011)...........................................................4, 10

*Stark v. Patreon, Inc.,*
   656 F. Supp. 3d 1018 (N.D. Cal. 2023)................................12

*State v. Pomianek,*
   110 A.3d 841 (N.J. 2015) ......................................................29

*Trans Union Corp. v. FTC,*
   267 F.3d 1138 (D.C. Cir. 2001)............................................10

*Turner Broadcast Systems, Inc. v. F.C.C.,*
   520 U.S. 180 (1997)..............................................................28

*United States v. Playboy Entertainment Group, Inc.,*
   529 U.S. 803 (2000)...........................................3, 8, 18, 28

*United States DOD v. FLRA,*
   510 U.S. 487 (1994)..............................................................15

*United States DOJ v. RCFP,*
   489 U.S. 749 (1989)..............................................................14

*Universal City Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001) ..................................................................17

*Usachenok v. Department of the Treasury*,
   313 A.3d 53 (N.J. 2024) ......................................................................30

*Vidal v. Elster*,
   602 U.S. 286 (2024)........................................................................5, 13

*VoteAmerica v. Schwab*,
   121 F.4th 822 (10th Cir. 2024) ......................................................7, 14

*X Corp. v. Bonta*,
   116 F.4th 888 (9th Cir. 2024) .................................................................8

**Federal Statutes**

Daniel Anderl Judicial Security and Privacy Act of 2022, Pub. L. No.
   117-263, 136 Stat. 2395 (2022) .....................................................23, 26

**State Statutes**

Del. Code Ann. tit. 10 § 1924 ......................................................................26

Del. Code Ann. tit. 11 §§ 9611 *et seq.*......................................................16

Md. Code Ann., Cts. & Jud. Proc. § 3-2301 ...............................................23

Md. Code Ann., Cts. & Jud. Proc. § 3-2303 ...............................................24

N.J.S.A. 2A:82-46.......................................................................................16

N.J.S.A. 47:1B-3 .........................................................................................19

N.J.S.A. 47:4-1 *et seq.* ...............................................................................16

N.J.S.A. 56:8-166.1...........................................................................11, 29, 31

N.J.S.A. 56:8-166.7.....................................................................................24

2021 N.J. Sess. Law Serv. Ch. 371 § 8.....................................................25

23 Pa. C.S.A. §§ 6701 *et seq.*....................................................................16

**Other Authorities**

Philip E. Hassman, *Public Addresses as Well as Name of Person as Invasion of Privacy*, 84 A.L.R.3d 1159 § 1 (1978) ............................................14

N.J.R. 1:38-3 ...........................................................................................16

RESTATEMENT (SECOND) OF TORTS § 652I .............................................................30

# INTRODUCTION

No one disputes that judges and law enforcement officers face serious risks, or that the government should be able to enact laws to protect their safety.  The federal government and several states have enacted versions of Daniel's Law that attempt to strike a balance between the important speech and safety interests at stake.  This case is not about the validity of those laws; nor is it about the constitutionality of data protection laws generally.  It is only about the singular approach adopted in New Jersey's private cause of action.

To argue the current version of Daniel's Law is constitutional, Plaintiffs and the New Jersey Attorney General (together, "Appellees") invent their own bespoke tests, which no court, including the district court below, has ever adopted.  They devise a host of theories for their new forms of reduced scrutiny, trying mightily to bend well-established concepts like content-neutrality, commercial speech, and the *Daily Mail* test to fit the Law within their custom-built frameworks.  None fits.

New Jersey's Daniel's Law is a content-based restriction on noncommercial speech.  Under foundational First Amendment jurisprudence, that means Appellees face the "daunting burden" of showing it is narrowly tailored to – and the *least* restrictive means of – achieving the government's interest in safety.  *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 127 (3d Cir. 2023).  Appellees do not come close to satisfying that standard.

While Appellees contend the Law's sweeping ban on private actors' "disclosures" is "necessary," they stand by its array of carve-outs for disclosures by the government – to everyone from real estate brokers and union chiefs to political parties and government vendors – that pose the same "obvious risk." Worse, the Law does not require the government to stop its own *public* disclosures. Appellees brush this loophole aside, saying it exists for "good reason." But they fail to explain why the Law gives covered persons and their assignees the unprecedented power to penalize private actors, on a strict-liability basis, for merely repeating the contents of government records.

The Law's holes leave open the "limitless backdoor" to the same harms it seeks to foreclose. Still, Appellees extol this scheme for giving covered persons the right to "control" the information. This supposed virtue is a constitutional vice. It authorizes covered persons – primarily public officials – to selectively determine whose speech will be censored, providing a vehicle for viewpoint- and speaker-based discrimination, concerns at the very heart of the First Amendment.

Ultimately, this case is not about the general policy of limiting the publication of public servants' contact information on the Internet. It is about the specific statute New Jersey chose to enact – weighed down by the recent amendments tailor-made for Atlas and its venture-capitalist backers to make a Silicon-Valley-sized return on their investment. Appellees offer no explanation for

2

the legislative changes lobbied for by Atlas, which made possible the nearly 200 cases it is now prosecuting.  And the legislative record is silent on why New Jersey alone needed to adopt this one-of-a-kind regime.

This appeal poses a narrow question with a straightforward resolution:  Is this unique Law facially unconstitutional?  Under long-settled precedent, the answer is "yes."

## ARGUMENT

## I. STRICT SCRUTINY GOVERNS THIS FACIAL CHALLENGE TO A CONTENT-BASED SPEECH RESTRICTION.

Daniel's Law is a content-based restriction on speech that must withstand strict scrutiny.  *E.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015); *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).  Because content-based restrictions are "presumed invalid," *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004), they must be narrowly tailored to achieve a compelling interest, *Reed*, 576 U.S. at 171.  Thus, Daniel's Law must use the "least restrictive means" and "curtail[] speech as little as possible."  *Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*, 101 F.4th 266, 271 (3d Cir. 2024).

The Law falls well short of this "demanding standard" and is facially unconstitutional.  *Brown*, 564 U.S. at 799; *see* Defs. Br. at 25-41.  Recognizing this

result, Appellees attempt to evade strict scrutiny at every turn. Each of their efforts misses the mark.

*First*, Plaintiffs, but not the Attorney General, argue the Law does not regulate speech because "[d]ata or symbolic representations are not the same thing as 'communicative content.'" Pls. Br. at 33-34. But the Law targets what Plaintiffs derisively describe as "data" because of what that data "communicates" – a covered person's address and phone number. JA101. Moreover, Plaintiffs cite no case for their theory, which the Supreme Court has rejected. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("dissemination of information," including data, is speech); *see also, e.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("acts of 'disclosing' and 'publishing' information" are speech).[1]

*Second*, Appellees contend the Law is "agnostic as to content" because it applies "only when a covered person has expressly requested nondisclosure." AG Br. at 33-34; Pls. Br. at 33-34. But a law does not become content-neutral by granting a person the power to censor particular content. By Appellees' logic, a

---

[1] Electronic Privacy Information Center ("EPIC") endeavors to rewrite *Sorrell*'s acknowledgement that disseminating data is speech by arguing the Court "treated prescriber-identifying data not as speech but as an instrumentality of speech." EPIC Br. at 7. EPIC overlooks that, unlike here, the respondents challenging the law in *Sorrell* did not possess the data and, without it, could not speak. The Court thus explained that the speech-based restriction on pharmacies (which did possess the data) "impose[d] a content- and speaker-based burden on respondents' own speech." 564 U.S. at 569-70.

law requiring libraries to remove books about New Jersey law enforcement, but only if an officer mentioned in the book demands it, would be deemed "agnostic as to content" – an absurd proposition.  Indeed, recent Supreme Court precedent explains that a law is content-based even when it turns on whether the speaker lacks a person's "consent" for speech referring to them.  *Vidal v. Elster*, 602 U.S. 286, 295 (2024).

Daniel's Law is unlike the "neutral, location-based lines" drawn by the regulation in *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61, 69 (2022), on which Appellees rely.  That regulation required review of a sign's content merely to determine whether location-based rules applied.  *Id.* at 71. The Court contrasted that regulation with laws that draw lines based on "topic or subject matter."  *Id.*  Daniel's Law does precisely that:  It "singles out specific subject matter for differential treatment," *Reed*, 576 U.S. at 169, preventing "discussion of an entire topic" – *i.e.*, covered persons' addresses and phone numbers.  *City of Austin*, 596 U.S. at 70.

Nor is Daniel's Law like the statute in *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015) (cited in AG Br. at 35; Pls. Br. at 34), which was deemed content-neutral because it focused on the "origin of the information," motor vehicle records.  *Id.* at 949.  It did not limit "dissemination of the very same

5

information" if "acquired from a lawful source." *Id.* By contrast, Daniel's Law bans disclosures across-the-board, regardless of the information's source.

**Third**, the Attorney General misplaces reliance on the "secondary effects" doctrine, claiming the "feature that drives coverage" under the Law is the "risk" posed by disclosing covered persons' information. AG Br. at 33-35. Yet, as the case cited by the Attorney General explains, this doctrine is limited to "proscribable" classes of speech, like incitement and obscenity, and, even then, listeners' "reactions" do not qualify as a "secondary effect." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389, 394 (1992).

**Fourth**, the Supreme Court has foreclosed Appellees' claim that only viewpoint-based restrictions require strict scrutiny and that laws with a "benign motive" are insulated from this burden. Pls. Br. at 33-35; AG Br. at 23, 33-34. A content-based law is subject to strict scrutiny "even if it does not discriminate among viewpoints" and "regardless of the government's benign motive." *Reed*, 576 U.S. at 165, 169. Appellees' cases explain why: Concerns about suppression of protected speech are "present not only when a regulation discriminates on the basis of viewpoint, but also when a regulation restricts discussion of an entire topic." *Project Veritas v. Schmidt*, 125 F.4th 929, 950 (9th Cir. 2025) (cleaned up); *see, e.g.*, *Reed*, 576 U.S. at 156 ("The vice of content-based legislation . . . is

not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes.").

Unlike the laws discussed in Appellees' cases, Daniel's Law suppresses speech on a topic entirely. *E.g.*, *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 188-89 (2007) (no concern about "suppression" because unions could engage in same speech using other funds); *VoteAmerica v. Schwab*, 121 F.4th 822, 850 (10th Cir. 2024) (information could be provided to voter "in multiple alternative ways").

Moreover, by empowering covered persons – most of whom are public officials – to wield the Law's restrictions *whenever* they want against *whomever* they want, the Law enables both viewpoint- *and* speaker-based discrimination.

**Finally**, Appellees point to *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), to argue Defendants must develop the record to show "a substantial number of [the Law's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." Pls. Br. at 2, 28-29; AG Br. at 16-19, 21. This misunderstands *Moody*'s import in challenges to laws containing content-based restrictions.

In *Moody*, the Supreme Court reaffirmed that in "the usual First Amendment case, we must decide whether to apply strict or intermediate scrutiny." 603 U.S. at 740. As this Court held in *Bruni v. City of Pittsburgh*, if a law is content-based and fails strict scrutiny, it is facially invalid because it cannot "be constitutionally applied to anyone." 824 F.3d 353, 363 (3d Cir. 2016).

7

*Moody*, however, was not the usual First Amendment case. There, the Court considered the constitutionality of two laws that applied to a "range of activities," some of which did not involve speech or otherwise implicate the First Amendment. 603 U.S. at 724. The lower courts had focused only on "heartland applications," like curating Facebook's News Feed, which involved "editorial discretion" protected by the First Amendment. *Id*. They did not consider the laws' applications to activities not protected by the First Amendment, like filtering users' incoming emails and transmitting their direct messages. *Id.* at 724-26. The Supreme Court thus remanded the cases for lower courts to consider "the full range of activities the laws cover," "decide which of the laws' applications violate the First Amendment," and "measure" them against constitutional applications. *Id.*

Nothing in *Moody* changed, much less overruled, *Bruni* and the longstanding precedent requiring strict scrutiny in facial challenges to content-based restrictions. *E.g.*, *Reed*, 576 U.S. 155; *Brown*, 564 U.S. 786; *Playboy*, 529 U.S. 803. Thus, post-*Moody*, courts around the country continue to apply strict scrutiny in such challenges – even to content-based restrictions protecting privacy interests. *E.g.*, *X Corp. v. Bonta*, 116 F.4th 888, 899 (9th Cir. 2024) (applying strict scrutiny where "every application" raises "same First Amendment issues"); *NetChoice, LLC v. Griffin*, 2025 WL 978607, at *14 (W.D. Ark. Mar. 31, 2025) (rejecting argument that "record is far too underdeveloped" because, under strict scrutiny, the law is

8

"unconstitutional in all conceivable applications"); *NetChoice, LLC v. Reyes*, 748 F. Supp. 3d 1105, 1120-21 (D. Utah 2024) (content-based law that fails strict scrutiny has "no constitutionally permissible application"); *Alexander v. Sutton*, 747 F. Supp. 3d 520, 550 (E.D.N.Y. 2024) (regulation protecting student privacy "not narrowly tailored"). Appellees cite no contrary authority.

This is a "usual First Amendment case." *Moody*, 603 U.S. at 740. There is no need to "speculat[e] about the law's coverage." AG Br. at 16 (quoting *Moody*, 603 U.S. at 723). The only activity the Law restricts is speech, and it does so in all its applications. Because the Law's restriction is content-based, under controlling precedent, strict scrutiny applies. *Bruni*, 824 F.3d at 363.

## II.   LESSER SCRUTINY IS NOT WARRANTED.

Appellees next seek to avoid strict scrutiny by arguing that even if the Law is content-based, it nonetheless is exempt from that "daunting burden." Again, their arguments miss the mark.

### A.   The Law Does Not Regulate Commercial Speech.

The Attorney General, but not Plaintiffs, argues the Law "primarily regulates" commercial speech. AG Br. at 29. This argument fails from the start. The commercial speech doctrine applies only when "*all* speech hampered by [a

law] is commercial." *Sorrell*, 564 U.S. at 571 (emphasis added).[2] Even if the Law

reaches both commercial and noncommercial speech as the Attorney General

contends, the doctrine does not apply because the Law "admit[s] of no exception

for noncommercial speech." *City of Austin*, 596 U.S. at 68 n.3.[3] Here, as Plaintiffs

emphasize, the Law "cover[s] essentially all disclosures," Pls. Br. at 39,

prohibiting *any* disclosure for *any* reason in *any* context.

The Attorney General nevertheless argues that the commercial speech

doctrine is implicated because the Law applies to "data brokers and the like," with

"mine-run applications" limited to "for-profit companies that transmit gigabytes of

personal information each day." AG Br. at 31. The test for whether speech is

commercial does not turn on *who* is regulated but the type of speech proscribed. In

any event, the Law's text is not limited to "data brokers" or "for-profit companies."

Unlike the laws addressed in the Attorney General's cases, *see Trans Union Corp.*

*v. FTC*, 267 F.3d 1138, 1140 (D.C. Cir. 2001) (regulating marketing lists sold by

---

[2] In *Sorrell*, the Court held "there [was] no need to determine whether all" speech restricted by the law was commercial because "the outcome [was] the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." 564 U.S. at 571. The same is true for Daniel's Law. *Infra* at 20-28.

[3] Neither of the three-decade-old cases cited by the Attorney General is to the contrary. AG Br. at 32-33. One dealt with as-applied challenges, *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 486 (1989); the other involved solely commercial speech, *Am. Future Sys., Inc. v. Pa. State Univ.*, 752 F.2d 854, 862 (3d Cir. 1984).

10

consumer reporting agencies), Daniel's Law applies to disclosure by *any* "person, business, or association."  N.J.S.A. 56:8-166.1.

Still, the Attorney General posits the Law regulates commercial speech because "disclosing personal information for profit is commercial speech."  AG Br. at 30.  But an economic interest in disclosure, including in selling information as a "product," *id.* at 31, cannot alone transform the disclosures into commercial speech.  If it could, news reports would be less protected simply because they are sold for profit.  *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983) (a speaker's "economic motivation" is "insufficient by itself" to render speech commercial); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 960 (9th Cir. 2012) (collecting cases).

The Attorney General does not point to any case in this Circuit to support its view that Daniel's Law regulates commercial speech – presumably because the Law does not regulate only speech proposing a commercial transaction, referring to a product, containing an advertisement, or relating "solely to the economic interests of the speaker and its audience."  *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 137 (3d Cir. 2020).  Instead, the Attorney General relies on a Ninth Circuit Lanham Act decision with a "narrow" holding tied to that case's "troubling allegations" of commercial deception.  *Ariix, LLC v. NutriSearch Corp.*,

985 F.3d 1107, 1118 (9th Cir. 2021) ("marketing sham" passing itself off as "independent" was commercial speech).

Failing to find support in this Court's precedent, the Attorney General resorts to out-of-circuit district court cases involving consumer privacy laws that bear little resemblance to Daniel's Law. AG Br. at 30-31 (collecting cases). Those laws do not categorically "prohibit" speech. They merely require businesses to keep confidential certain information they collect from consumers unless the consumers consent – setting the default rules for commercial dealings with those consumers. *E.g.*, *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 33 (D. Mass. 2024) (law to "preserve personal privacy with respect to the rental, purchase, or delivery of videotapes"); *Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1034 (N.D. Cal. 2023) (disclosure of plaintiff's "commercial interactions"); *Boelter v. Hearst Commcn's, Inc.*, 192 F. Supp. 3d 427, 445 (S.D.N.Y. 2016) (restriction on "sellers" from disclosing "identity of individuals who purchase" their products); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579, 597 (S.D.N.Y. 2016) (information "obtained" through defendant's "business"). Notably, businesses are not independently entitled to collect the sorts of information covered by those statutes; it comes from the consumers with whom they do business. By contrast, Daniel's Law does not regulate transactions between consumers and businesses, and does not involve information only available from the individual in

12

question.  It is a flat-out prohibition on speech imposed on anyone who receives a takedown notice, no matter how the information is obtained or used.

### B.    The Law Cannot Be Justified by "History and Tradition."

Appellees misread the Supreme Court's decision in *Vidal v. Elster* as imposing a "history and tradition" test for content-based speech restrictions.  AG Br. at 20-27; Pls. Br. at 23.  In *Vidal*, the Court upheld a trademark prohibition that continued the "common-law tradition" of "prohibiting a person from obtaining a trademark of another living person's name without consent."  602 U.S. at 302. That decision did not overrule decisions applying strict scrutiny to content-based restrictions and replace that scrutiny with a historical inquiry.  In fact, the Court emphasized that its decision was "narrow," explicitly stating it did not even "set forth a comprehensive framework for judging" other "content-based *trademark* restriction[s]."  *Id.* at 310 (emphasis added).

Even if *Vidal* now requires a consideration of "history and tradition" in First Amendment facial challenges, that inquiry would not make Appellees' case. Unlike the long history of restrictions on trademarking other people's names, there is no "historical analogue" for barring private actors from disclosing addresses and phone numbers.  *Id*. at 308.  That information has been publicly available and freely published throughout history.  *See* Defs. Br. at 7-9, 31; *see also* Pls. Br. at 48

13

(telephone directories were once "ubiquitous"); AG Br. at 25 ("most people's contact information is publicly available").[4]

Nor does the common-law conception of privacy provide a historical basis for restricting disclosure of addresses and phone numbers. AG Br. at 4-5; Pls. Br. at 34-35. Historically, privacy did not extend to facts "freely available to the public." *U.S. DOJ v. RCFP*, 489 U.S. 749, 763 (1989). Thus, disclosing addresses and phone numbers does not give rise to liability under privacy torts. Defs. Br. at 59-60; Philip E. Hassman, *Public Addresses as Well as Name of Person as Invasion of Privacy*, 84 A.L.R.3d 1159 § 1 (1978) (even publication "with the expectation that it would bring persons to that address to molest and harass the occupants" would "not qualify for recovery").[5]

---

[4] The only appellate case cited to support Appellees' reading of *Vidal* is *VoteAmerica*, 121 F.4th at 850-51 (AG Br. at 21), which dealt with a prohibition on distributing pre-filled mail ballot applications. That prohibition was a "time, place, and manner restriction" that comported with "the history of regulations (instructions) governing the filling out of noncontroversial information on government forms." *Id.*

[5] Plaintiffs cite only two cases where such claims were allowed. Pls. Br. at 27 n.12. Both involved disclosures about the location of individuals who faced specific security risks. *Capra v. Thoroughbred Racing Ass'n of N. Am., Inc.*, 787 F.2d 463, 464-45 (9th Cir. 1986) (individuals in witness protection, for whom jury would need to "consider the extent to which the parties voluntarily exposed themselves"); *Hyde v. City of Columbia*, 637 S.W.2d 251, 258 (Mo. Ct. App. 1982) (abduction victim whose dangerous assailant was at large).

Finding no historical support for the privacy of addresses and phone numbers, Appellees cite broad conceptions of "privacy in the home." AG Br. at 2. But Daniel's Law does not regulate disclosures about what happens inside a home. Nor does it protect against invasions of "personal information" disclosed in private communications, whether through "eavesdropping," confidential "letters," or communications with census takers. AG Br. at 4-5.

Recognizing the Law has little in common with traditional conceptions of "privacy," Appellees advance a different conception – a person's right to "control" information – pointing to cases regulating *government* disclosures. Pls. Br. at 25; AG Br. at 52; *see also U.S. DOD v. FLRA*, 510 U.S. 487, 500 (1994) (cited in Pls. Br. at 26) ("privacy interest protected by [FOIA] 'encompass[es] the individual's control of information concerning his or her person'" (*quoting RCFP*, 489 U.S. at 763)). Whatever "'nontrivial' privacy interest" a person has in their home address when a law mandates the *government* must disclose it, *A.A. ex rel. M.M. v. New Jersey*, 341 F.3d 206, 212-13 (3d Cir. 2003), that interest does not justify banning *private* actors from repeating information already available to the public. *See Schrader*, 74 F.4th at 127 ("the strength of those 'privacy interests fade[s] once information already appears on the public record'").[6]

---

[6] *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) (cited in Pls. Br. at 24, 27), underscores the importance of address information actually being private to be actionable. There, undercover police, for whom "[a]nonymity is essential,"

Finally, Appellees analogize to more recent laws that protect specific records, including video rental history and driving records.  AG Br. at 5.  None of those laws demonstrates a "history" of privacy in addresses and phone numbers. And none implicates the right to publish information lawfully obtained from *public* records, a right protected by the First Amendment.  *See, e.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975); Defs. Br. at 28-29.

The other modern laws Appellees cite are equally inapposite.  *See* AG Br. at 6.  Some apply only to the government.  *E.g.*, N.J.S.A. 2A:82-46(a); N.J.R. 1:38-3(c)(12).  Others create "address confidentiality" programs that offer participants a substitute address and, in doing so, provide examples of less speech-restrictive means that New Jersey could have deployed to protect at-risk covered persons.  *See* N.J.S.A. 47:4-1 *et seq.*; 23 Pa. C.S.A. §§ 6701 *et seq.*; Del. Code Ann. tit. 11 §§ 9611 *et seq.*

## C.    The *Daily Mail* Test Does Not Supplant Strict Scrutiny.

Appellees' last effort to evade strict scrutiny is to create a lesser form of scrutiny they claim is divined from *Daily Mail* and its progeny.  Pls. Br. at 17-32; AG Br. at 27-29.  But, as this Court recognized in *Schrader*, the *Daily Mail* test does not replace the requirement that content-based laws withstand strict scrutiny.

---

were permitted to pursue a claim against the *government* for disclosing their addresses to counsel for gang members "with a propensity for violence" who were "likely to seek revenge."  *Id.* at 1067.

74 F.4th at 128 (*Daily Mail* test "stands apart from the content-focused analysis" of strict scrutiny).  No court, other than the district court below, has held otherwise.

Tellingly, despite saying they support the district court's approach, neither Appellee actually argues in favor of the watered-down *Daily Mail* analysis it adopted.  Instead, they advocate two different approaches without citing a single case to support either one.  According to Plaintiffs, if a restriction targets speech implicating some privacy interest and the speech is not a matter of public concern, *no* scrutiny applies.  Pls. Br. at 13 ("the *Daily Mail* test does not mandate further scrutiny of speech that fails the threshold 'public concern' test").  That defies foundational First Amendment precedent extending protection even to speech that is "dry" and "devoid of advocacy, political relevance, or artistic expression." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 446 (2d Cir. 2001) (collecting cases); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759-60 (1985) (even *false* speech on "matters of purely private concern" is granted some First Amendment protection).

In contrast, the Attorney General theorizes that, where no public concern is implicated, a law is subject to intermediate scrutiny.  AG Br. at 28.  It offers no legal support for this theory, which has no basis in Supreme Court precedent.  The *Daily Mail* line of cases applies the "most exacting" scrutiny possible to certain speech, *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 101-102 (1979), holding that

17

punishment for the publication of true, lawfully obtained information on matters of public concern "may lawfully be imposed, *if at all*, only when narrowly tailored to *a state interest of the highest order*," *Fla. Star v. B.J.F.*, 491 U.S. 524, 541 (1989) (emphasis added).  Those cases do not hold that lower scrutiny would be warranted had the information at issue not been a matter of public concern.  Nor do they reaffirm a "settled framework" of lesser scrutiny for content-based privacy laws. Pls. Br. at 23; *see*, *e.g.*, *IMDb.com v. Becerra*, 962 F.3d 1111, 1123 (9th Cir. 2020).  The Supreme Court instead has instructed that content-based laws cannot avoid strict scrutiny based on a "perception" that the restricted speech "is not very important." *Playboy*, 529 U.S. at 826.

Accordingly, either of Appellees' approaches would effect a sea change in First Amendment jurisprudence.  Any content-based law passed in the name of "privacy" could evade stringent constitutional scrutiny.

To make their theories work, Appellees seek to cabin "public concern" to mean only "newsworthy." *E.g.*, AG Br. at 51.  The category is far broader. Speech involves a matter of public concern whenever its subject matter is "of general interest and of value and concern to the public at the time of publication." Pls. Br. at 31 (quoting *City of San Diego v. Roe*, 543 U.S. 77, 84, (2004)). Addresses and phone numbers are undoubtedly of general interest and value to the public.  As the district court recognized, and Daniel's Law itself confirms, their

availability is necessary for a knowledgeable, functioning society, including to facilitate commercial transactions and political speech.  Defs. Br. at 7-9, 49-51; *e.g.*, N.J.S.A. 47:1B-3(1)(b), (2) (allowing government disclosures to political parties and for real estate transactions).[7]

Thus, the public interest in disclosing this information is even stronger than in *Florida Star*.  The government disclosure there (a rape victim's name) was made *contrary* to state policy.  *Fla. Star*, 491 U.S. at 536.  Here, the government has made this information available for public use.  Yet its republication is being punished.  That is unconstitutional.  *See id.* at 539 (if newspaper "merely reproduced" information "released by the Department, imposing civil damages would surely violate the First Amendment"); *Cox Broad.*, 420 U.S. at 496 (expressing "reluct[ance] to embark on a course that would make public records generally available to the media but forbid their publication").

---

[7] Plaintiffs incorrectly claim Defendants "forfeited any challenge to the District Court's ruling that the statute does not regulate speech on a matter of public concern in most of its applications."  Pls. Br. at 29; *see, e.g.*, *Atlas Data Privacy Corp. v. Whitepages, Inc.*, No. 24-3998 (D.N.J.) (ECF 41) (arguing information at issue is matter of public concern and protected by *Daily Mail* test).  In any event, the bases for denying the motions to dismiss and holding the Law is not facially unconstitutional are properly before this Court.  *See Moriarty v. Svec*, 164 F.3d 323, 328 (7th Cir. 1998) ("appellant can always challenge the legal theory upon which the district court relied").

**D.    Applying Strict Scrutiny Would Not Render Other Laws Unconstitutional.**

Amicus EPIC ominously warns that if Daniel's Law is subject to strict scrutiny, "virtually all data protection laws are presumptively unconstitutional," citing laws protecting consumer privacy, health information, credit history, financial information, biometric data, and location data.  EPIC Br. at 22-25.  This slippery slope argument elides a basic point:  The laws EPIC cites are fundamentally different, regulating the use of information disclosed in confidence, exchanged in commercial transactions, or collected through biometric or location-tracking technology – not from public records.  Unlike those laws, Daniel's Law applies to disclosure of public information by *any* person, regardless of the information's source or use.  Applying strict scrutiny to Daniel's Law says nothing about whether other laws – with distinct subject matters and more narrowly tailored scopes – are subject to or would withstand strict scrutiny.

**III.    THE LAW FAILS ANY LEVEL OF SCRUTINY.**

At bottom, Daniel's Law cannot withstand any level of scrutiny.  Even under intermediate scrutiny, Appellees cannot meet their burden of showing the Law is "narrowly tailored to serve a significant governmental interest." *Packingham v. N.C.*, 582 U.S. 98, 105-06 (2017).

A.  **The Notice Provision Does Not Constitute Narrow Tailoring.**

The Attorney General argues the Law is narrowly tailored because it includes an "opt-in" notice provision, comparing it to "opt-in" regimes like do-not-call registries.  AG Br. at 39-40 (collecting cases).  Those registries protect an "aspect of privacy" not relevant here:  "protection of the unwilling listener." *Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331, 340 (4th Cir. 2005); *see also, e.g.*, *Martin v. City of Struthers*, 319 U.S. 141, 148 (1943) (leaving decision on whether distributor "may lawfully call at a home . . . with the homeowner").  The do-not-call laws also do not ban speech; they restrict "only one avenue" of communication and ensure speakers have "a number of options" to engage in the same speech.  *Mainstream Mktg. Servs., Inc. v. FTC*, 358 F.3d 1228, 1243 (10th Cir. 2004).  In contrast, Daniel's Law gives a person the power to censor *all* "disclosures" by a would-be speaker.

B.  **The Law Improperly Permits Disclosures Posing Identical Risks.**

According to Appellees, the Law's expansive sweep "is necessary to adequately advance the law's interests."  AG Br. at 40.  Plaintiffs claim, for example, that barring "legitimate business-to-business disclosures" is necessary because all disclosures "create an obvious risk of 'unauthorized subsequent disclosures.'" Pls. Br. at 40; *see also* AG Br. at 53 (asserting "risks associated with widespread dissemination by private entities").  But allowing the government to

21

make identical kinds of disclosures to private entities – whether "mortgage originators," "title insurers," or any "vendor" or "organization" with a government contract – poses this same "obvious risk." Pls. Br. at 9-10, 32-33. Plaintiffs do not explain how the government providing information to any real estate broker in the "ordinary course of business" presents "limited risks," *id.* at 43-44, compared to a private entity providing the same information to the same broker, let alone to law enforcement authorities to conduct investigations or financial institutions to detect fraud, Defs. Br. at 16.

Plaintiffs spill substantial ink attempting to justify the numerous exemptions allowing government disclosures, Pls. Br. at 6-10, but ignore another glaring problem: The government's nondisclosure obligations are not triggered unless covered persons seek redaction, and there is no requirement to do so. Nor is there a remedy if the government fails to honor a redaction request.

Appellees attempt to explain away this loophole by claiming covered persons might have "good reason" to forgo redacting public records. Pls. Br. at 49; AG Br. at 42. That may be so. But, according to Appellees, grave risks are posed by any disclosure, "good reason" or not. *See* AG Br. at 40; Pls. Br. at 39-40. Allowing covered persons to seek liquidated damages against private entities while those same persons let the government freely disclose their contact information

fails to advance the government's interests "to a material degree." *Pitt News v. Pappert*, 379 F.3d 96, 107 (3d Cir. 2004).

The same risks also arise when covered persons publish the information themselves, as some plaintiffs have done here. Defs. Br. at 34. Plaintiffs argue it would be "absurd[]" to "prohibit covered persons from disclosing their own" information. Pls. Br. at 49. But the point is not that covered persons should be barred from disclosing their contact information. Rather, if they choose to disclose it publicly, they should not be able to recover money damages when others repeat it. Indeed, other laws limit liability when covered persons decide to make their information publicly available. Daniel Anderl Judicial Security and Privacy Act of 2022 ("Federal Daniel's Law"), Pub. L. No. 117-263, § 5934(d), 136 Stat. 2395, 3464-65 (2022); Md. Code Ann., Cts. & Jud. Proc. § 3-2301(d)(2).

Appellees defend the mandatory liability New Jersey's Law imposes by asserting a covered person's right to "control" the information. Pls. Br. at 49; AG Br. at 52. But that is not the "compelling interest" asserted by the Law. Allowing covered persons to choose which entities to censor – while letting the same information appear publicly on their social media, in government records, and through any entity they choose not to target – provides the same "limitless backdoor" Plaintiffs claim would "negate the entire purpose" of the Law. Pls. Br. at 40.

In seeking to justify the Law's holes, Appellees turn First Amendment burdens and constitutional limits on privacy claims upside-down. *See Fla. Star*, 491 U.S. at 534, 539 (liability cannot be imposed if information is "already known throughout the community" or plaintiff "voluntarily called attention to" it); *Schrader*, 74 F.4th at 127 ("When 'the government has failed to police itself in disseminating information,' prosecuting someone who later publishes that information 'can hardly be said to be a narrowly tailored means of safeguarding' confidentiality."); *Ostergren v. Cuccinelli*, 615 F.3d 263, 286-87 (4th Cir. 2010) (barring plaintiff's speech was not "narrowly tailored" due to state's "failure to redact SSNs before placing land records online").

### C.    The Law's Other Features Dramatically Expand Its Sweep.

The Law's other features – enacted through recent amendments – burden additional speech without materially advancing the government's interest.

Plaintiffs contend a verification requirement would be "burdensome" and "extraordinary," Pls. Br. at 46, but fail to square that with the government's verification requirement for redaction and with other laws – including New Jersey's own data privacy law – that enable verification. *See, e.g.*, Md. Code Ann., Cts. & Jud. Proc. § 3-2303; N.J.S.A. 56:8-166.7 (requiring "verified request" and exempting requests entities are "unable to authenticate"). Despite Plaintiffs' claims otherwise, Pls. Br. at 47 n.16, verification was required under the Law

24

previously, a change that remains unexplained.  *See* 2021 N.J. Sess. Law Serv. Ch. 371 § 8.  The Attorney General responds that a verification mechanism is unnecessary because an entity can ask follow-up questions and assert "statutory or as-applied defenses."  AG Br. at 42.  This response is cold comfort.  The Law does not include any statutory defenses based on lack of verification, and the Attorney General provides no constitutional basis for a theoretical as-applied challenge.

Appellees next contend that because the Law's claim-assignment and liquidated damages provisions do not themselves restrict speech, they are not constitutionally relevant.  Pls. Br. at 47; AG Br. at 42-43.  For support, they cite a case holding only that a statute's "penalties do not offend the First Amendment *simply because* of their criminal character."  *Free Speech Coal., Inc. v. Att'y Gen. United States*, 974 F.3d 408, 425 (3d Cir. 2020) (emphasis added).  The Supreme Court, however, has recognized that the nature and extent of penalties *can* impermissibly stifle protected speech.  *See, e.g.*, *ACLU*, 542 U.S. at 660 ("Content-based prohibitions, enforced by severe criminal penalties, have the constant potential to be a repressive force . . . ."); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002) ("[w]hile even minor punishments can chill protected speech," "severe" penalties are particularly burdensome).  Indeed, the Court has held that steep civil penalties can have a profound chilling effect on First Amendment

freedoms.  *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 277-78 (1964)

(recognizing "inhibiting" effect of the "fear of damage awards").

This risk is not a "fantastical hypothetical."  AG Br. at 43.  The cases before

this Court seek hundreds of millions of dollars.  More than 100 identical Atlas-

initiated cases are pending in state court, with potential exposure totaling billions

of dollars.  Plaintiffs counter that, "without the threat of monetary liability,

defendants would have virtually no incentive to comply with the law."  Pls. Br. at

48.  This claim has no support in the legislative record and is "little more than

assertion and conjecture."  *Schrader*, 74 F.4th at 127.[8]  So too is Plaintiffs' claim

that assignees are needed to "identify, monitor, and bring suit."  Pls. Br. at 47.  No

other government has enacted such a regime.[9]

Taken together, these provisions grant certain individuals broad censorial

power – wielded through mandatory penalties and massive payouts for third parties

– without any guarantee that the censorship will "materially advance" a

government interest.  That fails any type of scrutiny.

---

[8] Plaintiffs claim "many defendants are still not compliant with the law," citing a
complaint's allegation from February 2024. Pls. Br. at 12.  Nothing in the record
supports that allegation, much less shows it is true 15 months later.

[9] The Attorney General refers to the federal and Delaware laws as having "claim-
assignment" provisions. AG Br. at 11 n.1.  They do not.  Those laws allow
designated individuals to send *notices* – not file suit – on behalf of covered
persons.  *See* Federal Daniel's Law § 5934(b)(1), 136 Stat. at 3462; Del. Code
Ann. tit. 10 § 1924(d).

**D.    Similar Laws Are More Narrowly Tailored.**

In a final effort to save the Law, the Attorney General compares various of its provisions to isolated provisions in similar laws.  AG Br. at 11.  These cherry-picked comparisons ignore significant differences that make New Jersey's Law the broadest and most punitive.  Defs. Br. at 37-39.  Unlike other laws, New Jersey's is not limited to public disclosures or circumstances where a person "reasonably should know" the risk of harm to a specific individual.  The Law – as amended – applies to *any* disclosure by *any* person who receives a takedown notice, regardless of why, how, where, or to whom the information is made available, or whether the information remains publicly available from the government or covered persons themselves.  It also is the only law to enforce this absolute ban with an assignment-based strict-liability regime, which the Legislature adopted without explanation.  *Id.* at 11-12.

Appellees do not try to justify the Law's departure from similar laws or its increasingly speech-restrictive amendments.  Instead, the Attorney General insists the Legislature's "fail[ure] to articulate sufficient reasons" for the amendments has no "bearing on the law's constitutionality."  AG Br. at 53 n.12.  Not so.  *See Sable Commc'ns of California, Inc. v. FCC*, 492 U.S. 115, 130 (1989) (invalidating law where congressional record contained "no evidence as to *how* effective or ineffective" previous, less-restrictive regulations "were or might prove to be");

*Playboy*, 529 U.S. at 822-23 (invalidating law where "near barren legislative record" offered "[n]o support" for the effectiveness of the statute, as compared to less-restrictive alternatives). Even in the lone case the Attorney General cites, the Supreme Court explained it would not "displace Congress's judgment" when evaluating a *content-neutral* law under intermediate scrutiny, "so long as its policy is grounded on reasonable factual findings supported by evidence that is substantial for a legislative determination." *Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 224 (1997). Here, Appellees point to *no* factual findings or evidence supporting the uniquely restrictive aspects of Daniel's Law.

## IV.   THE LAW HAS NO *MENS REA* REQUIREMENT AND THEREFORE SHOULD BE INVALIDATED.

Appellees concede the First Amendment forbids punishing speech on a strict liability basis. Defs. Br. at 53-55. They fail, however, to address the federal appellate decisions striking down laws for this reason. *Id.* at 58 (citing *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 691 (8th Cir. 1992); *Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 613 (6th Cir. 2005)). Like those laws, the current Daniel's Law contains no *mens rea* requirement. Consistent with precedent set by the Sixth and Eighth Circuits, the Law should be invalidated.

Appellees' arguments for saving the Law all fail. ***First***, the Attorney General claims that, as originally drafted, the Law "allowed civil remedies for

28

negligent conduct" and that the "current version retains that architecture." AG Br. at 46. In reality, the Legislature removed that foundation and built a new structure through its amendments, now providing violators "shall be liable." N.J.S.A. 56:8-166.1(b), (c) ("court shall award" actual damages). By excising the Law's preexisting scienter requirement, the Legislature "pointedly decided not to include" one. *State v. Pomianek*, 110 A.3d 841, 855 (N.J. 2015). The Law's new language "expressly require[s]" courts to impose liability without fault, just as in the cases cited by Plaintiffs. Pls. Br. at 52 (quoting *Mascola v. Mascola*, 401 A.2d 1114, 1118 (N.J. Super. Ct. App. Div. 1979)). In *Goldhagen v. Pasmowitz*, the New Jersey Supreme Court recognized that the Legislature "expanded the liability of dog owners by imposing a standard of strict liability in dog-bite cases" when it enacted a law stating that owners "shall be liable for such damages" – the same language the Legislature adopted in Daniel's Law. 255 A.3d 1191, 1198 (N.J. 2021) (cited in Pls. Br. at 52). Here, as there, the Legislature "changed the law theretofore existing in that it made liability absolute upon the happening of the act." *Id.* at 1199.

*Second*, Appellees claim that a statute must be construed to conform to the Constitution. Pls. Br. at 51; AG Br. at 45. As they acknowledge, however, the principle of constitutional avoidance arises only where a statute is "reasonably susceptible" to two meanings. Pls. Br. at 51 (quoting *Gallenthin Realty Dev., Inc.*

*v. Borough of Paulsboro*, 924 A.2d 447, 457 (N.J. 2007)); AG Br. at 44. Here, the Law's text provides only one reasonable interpretation: It imposes strict liability. Defs. Br. at 56-58. The district court's "inclusion of a negligence standard," JA120, was the type of "obvious" rewrite New Jersey precedent forecloses. Pls. Br. at 53 n.18; *Usachenok v. Department of the Treasury*, 313 A.3d 53, 63 (N.J. 2024) (court can "excise a constitutional defect or engraft a needed meaning," not "expand and rewrite" text).

*Third*, Appellees claim the Law should be interpreted in light of "common law analogues." Pls. Br. at 52 (quoting *Evans-Aristocrat Indus., Inc. v. Newark*, 380 A.2d 268, 272-73 (N.J. 1977)); AG Br. at 46 (invoking "tort principles"). This principle of statutory interpretation is inapplicable because the Law's text "provide[s] a definitive answer." *Evans-Aristocrat*, 380 A.2d at 272. Regardless, Daniel's Law has no "common law analogue." The Legislature departed from traditional privacy principles to authorize covered persons to punish speech not actionable under common law, using methods unavailable at common law. *See supra* at 14; *see also* RESTATEMENT (SECOND) OF TORTS § 652I cmt. a (privacy is a "personal right" and therefore "cause of action is not assignable").

*Fourth*, Appellees claim the Law's notice provision creates a *de facto* negligence standard. Pls. Br. at 54; AG Br. at 45. According to the Attorney General, that provision demonstrates the Legislature "did not want entities held

responsible for disclosures they could not have reasonably avoided." AG Br. at 45. But the Law does not include the word "reasonably," and this *de facto* negligence standard is equivalent to the "negligence *per se* standard" rejected in *Florida Star*, 491 U.S. at 539; Defs. Br. at 54-55.

**Finally**, Appellees argue that a defendant's state of mind is only relevant as to the "risk that disclosing a covered person's protected information will violate their rights" under the Law. Pls. Br. at 54 n.19; *see also* AG Br. at 48-49. That circular logic is insufficient. First Amendment precedent demands that the culpability standard be tied to the harm a speech restriction seeks to prevent. Defs. Br. 58-60. Appellees do not address that precedent.

## <u>CONCLUSION</u>

Defendants respectfully request that the Court hold N.J.S.A. 56:8-166.1 facially unconstitutional.

Dated: May 30, 2025                    **BALLARD SPAHR LLP**

                                       */s/ Michael Berry*
                                       Marcel S. Pratt
                                       Michael Berry
                                       Anna Kaul
                                       1735 Market Street, 51st Floor
                                       Philadelphia, PA  19103-7599
                                       (215) 864-8500
                                       prattm@ballardspahr.com
                                       berrym@ballardspahr.com
                                       kaula@ballardspahr.com

                                       *Attorneys for Defendants-Appellants*
                                       *Thomson Reuters Enterprise Centre GmbH and*
                                       *West Publishing Corporation*
                                       *(No. 25-1570)*

                                       **TROUTMAN PEPPER LOCKE LLP**

                                       */s/ Angelo A. Stio III*
                                       Angelo A. Stio III
                                       Melissa A. Chuderewicz
                                       Stephanie L. Jonaitis
                                       Suite 400
                                       301 Carnegie Center
                                       Princeton, NJ 08540-6227
                                       (609) 951-4125
                                       Angelo.Stio@troutman.com
                                       Melissa.Chuderewicz@troutman.com
                                       Stephanie.Jonaitis@troutman.com

                                       *Attorneys for Defendant-Appellant*
                                       *RocketReach LLC (No. 25-1582)*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for Defendant-Appellant*
*Deluxe Corp. (No. 25-1559)*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for Defendant-Appellant*
*PropertyRadar Inc. (No. 25-1584)*

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

*Attorneys for Defendant-Appellant*
*DM Group Inc. (No. 25-1558)*

**SEYFARTH SHAW LLP**

*/s/ Robert T. Szyba*
Robert T. Szyba
620 Eighth Avenue, 32nd Floor
New York, NY  10018
(212) 218-5500
rszyba@seyfarth.com

*Attorneys for Defendants-Appellants*
*We Inform, LLC (No. 25-1555);*
*Infomatics, LLC (No. 25-1556); and*
*The People Searchers, LLC (No. 25-1557)*

**GORDON REES SCULLY
MANSUKHANI LLP**

*/s/ Clair E. Wischusen*
Clair E. Wischusen
291 W. Mt. Pleasant Avenue
Suite 3310
Livingston, NJ  070369
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendants-Appellants
Quantarium Alliance, LLC and Quantarium
Group, LLC (No. 25-1560)*

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

*/s/ Derek L. Shaffer*
Derek L. Shaffer
1300 I Street NW, Suite 900
Washington D.C., 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

-and-

Owen B. Smitherman
300 West 6th St, Suite 2010
Austin, TX 78701
(737) 667-6100
owensmitherman@quinnemanuel.com

*Attorneys for Defendant-Appellant
Yardi Systems, Inc. (No. 25-1561)*

**LOMURRO, MUNSON, LLC**

*/s/ Eric H. Lubin*
Eric H. Lubin
Monmouth Executive Center
4 Paragon Way, Suite 100
Freehold, NJ  07728
(732) 414-0300
ELubin@lomurrolaw.com

*Attorneys for Defendants-Appellants*
*Digital Safety Products, LLC (No. 25-1562);*
*Civil Data Research (No. 25-1563); and*
*Scalable Commerce & National Data*
*Analytics (No. 25-1564)*

**COOPER, LLC – COUNSELORS AT LAW**

*/s/ Ryan J. Cooper*
Ryan J. Cooper
Renier Pierantoni
108 N. Union Ave., Suite 4
Cranford, NJ  07016
ryan@cooperllc.com
renier@cooperllc.com

*Attorneys for Defendant-Appellant*
*Labels & Lists, Inc. (No. 25-1565)*

**FISHERBROYLES LLP**

*/s/ Jason A. Spak*
Jason A. Spak
6360 Broad Street #5262
Pittsburgh, PA  15206
(412) 401-2000
jason.spak@fisherbroyles.com

*Attorneys for Defendant-Appellant*
*Innovis Data Solutions, Inc. (No. 25-1566)*

**CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP**

*/s/ John E. MacDonald*
John E. MacDonald
3120 Princeton Pike, Suite 301
Lawrenceville, NJ  08648
(609) 454-0096
jmacdonald@constangy.com

*Attorneys for Defendants-Appellants*
*Accurate Append, Inc. (No. 25-1567); and*
*Restoration of America, Inc. and Voter*
*Reference Foundation, LLC (No. 25-1572)*

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Samantha L. Southall*
Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
(215) 665-3800
samantha.southall@bipc.com

*Attorneys for Defendants-Appellants Zillow Inc.*
*and Zillow Group, Inc. (No. 25-1568)*

**GIBBONS P.C.**

*/s/ Frederick W. Alworth*
Frederick W. Alworth
Kevin R. Reich
One Gateway Center
Newark, NJ  07102-5310
(973) 596-4500
falworth@gibbonslaw.com
kreich@gibbonslaw.com

*Attorneys for Defendant-Appellant*
*Equimine, Inc. (No. 25-1569)*

**RIKER DANZIG LLP**

*/s/ Michael P. O'Mullan*
Michael P. O'Mullan
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ  07962
(973) 451-8477
momullan@riker.com

*Attorneys for Defendant-Appellant*
*Melissa Data Corporation (No. 25-1571)*

**STINSON LLP**

*/s/ Richard J.L. Lomuscio*
Richard J.L. Lomuscio
100 Wall Street, Suite 201
New York, New York 10005
(646) 883-7471
richard.lomuscio@stinson.com

*Attorneys for Defendant-Appellant*
*i360, LLC (No. 25-1573)*

**GREENBERG TRAURIG, LLP**

*/s/ David E. Sellinger*
David E. Sellinger
Aaron Van Nostrand
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 443-3557
sellingerd@gtlaw.com
vannostranda@gtlaw.com

*Attorneys for Defendants-Appellants*
*GoHunt, LLC, GoHunt Management*
*Holdings, LLC, and GoHunt Management*
*Holdings II, LLC (No. 25-1574)*

**GREENSPOON MARDER LLP**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

**LOWENSTEIN SANDLER LLP**

*/s/ Jennifer Fiorica Delgado*
Jennifer Fiorica Delgado
One Lowenstein Drive
Roseland, NJ  07068
(646) 414-6962
jdelgado@lowenstein.com

*Attorneys for Defendant-Appellant*
*AccuZip, Inc. (No. 25-1575)*

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Matthew S. AhKao*
Matthew S. AhKao
One Riverfront Plaza, Suite 800
Newark, NJ  07102
(973) 577-6260
Matthew.AhKao@lewisbrisbois.com

*Attorneys for Defendant-Appellant*
*Synaptix Technology, LLC (No. 25-1576)*

**GREENSPOON MARDER LLP**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Joy Rockwell Enterprises, Inc. d/b/a*
*PostcardMania PCM LLC (No. 25-1577)*

41

**THOMPSON HINE LLP**

*/s/ J. Timothy McDonald*
J. Timothy McDonald
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia  30326
(404) 541-2906
Tim.McDonald@ThompsonHine.com

-and-

Steven G. Stransky (application for
admission pending)
127 Public Square, #3900
Cleveland, OH  44114
(216) 566-5500
Steve.Stransky@ThompsonHine.com

*Attorneys for Defendant-Appellant*
*Fortnoff Financial, LLC (No. 25-1578)*

**RKW, LLC**

*/s/ H. Mark Stichel*
H. Mark Stichel
10075 Red Run Blvd., 4th Floor
Owings Mills, MD  21117
(443) 379-8987
HMStichel@RKWlawgroup.com

*Attorneys for Defendant-Appellant*
*E-Merges.com, Inc. (No. 25-1580)*

**GORDON REES SCULLY
MANSUKHANI LLP**

*/s/ Clair E. Wischusen*
Clair E. Wischusen
291 W. Mt. Pleasant Avenue
Suite 3310
Livingston, NJ 07039
(973) 549-2500
cwischusen@grsm.com

*Attorneys for Defendant-Appellant
Nuwber, Inc. (No. 25-1581)*

**BLANK ROME LLP**

*/s/ Stephen M. Orlofsky*
Stephen M. Orlofsky
Philip N. Yannella
Thomas P. Cialino
300 Carnegie Center, Suite 220
Princeton, NJ 08540
(609) 750-2646
Stephen.Orlofsky@BlankRome.com
Philip.Yannella@BlankRome.com
Thomas.Cialino@BlankRome.com

*Attorneys for Defendant-Appellant
Belles Camp Communications, Inc.
(No. 25-1583)*

**GREENSPOON MARDER LLP**

_/s/ Kelly M. Purcaro_
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

_Attorneys for Defendant-Appellant_
_The Alesco Group, L.L.C. (improperly pled as_
_Alesco AI, LLC, Alesco Marketing Solutions,_
_L.L.C., Stat Resource Group Inc., and Response_
_Solutions Group, LLC)_
_(No. 25-1585)_

**GREENSPOON MARDER LLP**

_/s/ Kelly M. Purcaro_
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

_Attorneys for Defendant-Appellant_
_Searchbug, Inc. (No. 25-1586)_

**GREENSPOON MARDER LLP**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*Amerilist, Inc. (No. 25-1587)*

**GREENSPOON MARDER LLP**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant-Appellant*
*US Data Corporation (No. 25-1588)*

**MANATT, PHELPS & PHILLIPS, LLP**

*/s/ Kenneth D. Friedman*
Kenneth D. Friedman
7 Times Square
New York, NY  10036
(212) 790-4500
kfriedman@manatt.com

*Attorneys for Defendant-Appellant*
*Smarty, LLC d/b/a SmartyStreets, LLC*
*(No. 25-1589)*

**WOOD, SMITH, HENNING & BERMAN LLP**

*/s/ Jared K. Levy*
Jared K. Levy
400 Connell Drive, Suite 1100
Berkeley Heights, NJ  07922
(973) 265-9901
jlevy@wshblaw.com

*Attorneys for Defendants-Appellants*
*Compact Information Systems, LLC, Accudata*
*Integrated Marketing, Inc., Alumnifinder, ASL*
*Marketing, Inc., College Bound Selection*
*Services, Deepsync Labs, Homedata, and*
*Student Research Group (No. 25-1590)*

**GREENSPOON MARDER LLP**

*/s/ Kelly M. Purcaro*
Kelly M. Purcaro
Kory Ann Ferro
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, NJ  07102
(732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

-and-

**RAJ FERBER PLLC**
Kiran Raj
1629 K Street NW, Suite 300
Washington, DC  20006
(202) 827-9785
kiran@rajferber.com

*Attorneys for Defendant-Appellant*
*DarkOwl, LLC (No. 25-1591)*

**KAUFMAN DOLOWICH LLP**

*/s/ Christopher Nucifora*
Christopher Nucifora, Esq.
Timothy M. Ortolani, Esq.
Court Plaza North
25 Main Street, Suite 500
Hackensack, New Jersey 07601
(201) 708-8207
cnucifora@kaufmandolowich.com
tortolani@kaufmandolowich.com

*Attorneys for Defendant-Appellant Spy Dialer,*
*Inc. (No. 25-1592)*

**STARR, GERN, DAVISON & RUBIN, P.C.**

*/s/ Ronald L. Davison*
Ronald L. Davison, Esq.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
973.403.9200
rdavison@starrgern.com

*Attorneys for Defendant-Appellant Light-house List Company, LLC (No. 25-1593)*

**FREEMAN MATHIS & GARY, LLP**

*/s/ William Wendell Cheney, III*
William Wendell Cheney, III
Andrew W. Sheppard
3 Executive Campus, Suite 350
Cherry Hill, NJ 08002
856.406.1268, 1262
wcheney@fmglaw.com
Andrew.sheppard@fmglaw.com

*Attorney for Defendant-Appellant First Direct, Inc. (No. 25-1676)*

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**

*/s/ Jared M. Wichnovitz*
Jared M. Wichnovitz
50 Harrison Street, Suite 206
P.O. Box 631
Hoboken, NJ 07030
732.765-2157
jared@wichnovitzlaw.com

*Attorney for Defendant-Appellant Greenlight Venture Corp. (No. 25-1677)*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, and Local Appellate Rule 31.1, I hereby certify that:

1.      The foregoing Joint Reply Brief of Appellants complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the Court's order dated May 23, 2025, because, according to the word count of the word-processing system used to prepare the brief, the brief contains 7,189 words, excluding the table of contents, table of authorities, and certificates of counsel;

2.      The foregoing Joint Reply Brief of Appellants complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font;

3.      The text of the electronic brief and the text of the paper copies filed with the Clerk are identical; and

4.      The PDF file of this brief has undergone a virus check using Windows Defender Advanced Threat Protection Antivirus, Version 1.427.113.0 (last updated April 7, 2025), and no virus was detected.

This 30th day of May, 2025.

*/s/ Michael Berry*
Michael Berry

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May, 2025, I caused a true and correct copy of this Joint Reply Brief of Appellants to be served via ECF using the CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Michael Berry*
Michael Berry
